Thomas Lorenzo **WILLIAMS**, Appellant,

v.

Dr. George **BETO**, Director, Texas Department of Corrections, Appellee.

No. 21631.

United States Court of Appeals
Fifth Circuit.

Dec. 28, 1965.

Rehearing Denied Feb. 1, 1966.

Thomas Lorenzo Williams, Huntsville, Tex., George Dixie, (Court-appointed), Houston, Tex., for appellant.

Sam R. Wilson, Asst. Atty. Gen. of Texas, Houston, Tex., Gilbert J. Pena, Asst. Atty. Gen., Waggoner Carr, Atty. Gen. of Texas, Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellee.

Before TUTTLE, Chief Judge, COLEMAN, Circuit Judge, and HUNTER, District Judge.

COLEMAN, Circuit Judge:

This is a case in which the appellant seeks by habeas corpus in the Federal Courts to avoid a state imposed life sentence on the ground that he did not have effective assistance of counsel in the state court trial.

After a full evidentiary hearing, the district court found this collateral attack to be without merit. We affirm.

We are prompted to give this case more than ordinarily extensive discussion because we, too, are aware of those considerations which prompted Judge Burger in his concurring opinion in Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733 (1965) to say:

"With the enormous expansion of indigent representation comes a need for some guidelines to protect the volunteer lawyer who, after full consideration, decides on a course of

action which his indigent client opposes. As I see it that lawyer must be free to follow his own professional judgment and conscience no matter what his client thinks or be entirely free to withdraw rather than be compelled to advance absurd and nonsensical contentions on pain of a vicious attack from the jail house. We have no more right to ask volunteer lawyers to stultify themselves or prostitute their professional standards than we would have to demand that paid lawyers do so."

In this case, Attorney Lyle was not a volunteer lawyer, he was appointed by the Court, but the principle is the same.

It is now firmly settled that if they desire it those charged with crime are entitled to counsel when they are put to trial, even if the court has to furnish it by appointment. Once this summit was achieved, however, new hurdles were raised on the argument that such counsel had not been effective. We now see these attacks regularly and frequently. All persons are entitled to their constitutional rights and there is no disposition to say to the contrary. Since, however, attorneys are officers of the court and appointed attorneys act because the courts designate them to do so, there is certainly a duty to them. The time seems ripe to make the law in this area as plain as possible, realizing, of course, that the factual elements may not often be the same.

I

In 1949, when he was twenty-four years of age, Thomas Lorenzo Williams, appellant here, was sentenced to the federal penitentiary at Atlanta. In 1951, he received a conditional release. In 1952, he was committed to the federal penitentiary at Leavenworth to serve the remainder of that term. After about thirty days, he got out on a writ of habeas corpus from the federal court in Kansas City. The significance of this early experience in the criminal career of this federal habeas corpus Applicant becomes all too clear when we later find him expressly declining a state court appeal because, as he put it, he would go into the federal system and get out.

In late 1951, Williams was convicted in Brazoria County, Texas, of the crime of automobile theft. In 1954, he was convicted in Hansford County, Texas, of forgery.

On July 30, 1960, Williams went on a check writing spree in Dumas, Moore County, Texas, which resulted in six separate charges of forgery. In each instance he wrote a check on the Sunray State Bank in Sunray, Texas, and signed the name H. E. Tracy as the drawer of the check.

He was first tried on one of the indictments in November, 1960. At that time, he was represented by James R. Lovell, of the Dumas Bar. He was not charged as a recidivist under Article 63 of Vernon's Annotated Penal Code of Texas. His defense in that trial for forgery was that he received the permission of H. E. Tracy to sign Tracy's name to the check at a time when they both were drunk, or drinking heavily, in the Texas Hotel at Dumas. He told his counsel that the owners of the hotel could and would identify H. E. Tracy as being there with him. But when these people were contacted they said that the man who registered under the name of H. E. Tracy was none other than the Defendant, Thomas Lorenzo Williams. They did not know Tracy and had never seen the Herman Tracy whose picture was shown to them. Lovell, therefore, did not call these witnesses to the stand. Williams agreed at the time that they should not be called. The jury found him guilty and he was sentenced to two years in the state penitentiary. Attorney Lovell explained appellate procedures to Williams, but he said he did not want to appeal. He said that he would go into the federal courts, that "they were turning them loose there". Attorney Lovell explained to him that he could not go into the federal courts unless he appealed the conviction, that is, exhausted his state remedies. Williams insisted that he was not interested in an appeal in the state courts.

## II

During this first prosecution, the district attorney had indicated to Counsel Lovell that he was planning to prosecute Williams under Article 63. Thereafter, the grand jury of Moore County did indict the defendant on an additional charge of forgery, alleging that he forged a check for ten dollars payable to Dean's, a mercantile establishment in Dumas, signing the name of H. E. Tracy thereto, further charging that he passed this check as true to one Christine Baer, and further alleging the prior convictions in Brazoria and Hansford Counties as the basis for a life sentence in the event Williams should be convicted on the Moore County charge.

This second case came to trial on April 12, 1961. Some weeks prior thereto, as the district court found on the habeas corpus hearing, Hugh T. Lyle, an attorney of the Dumas Bar, who had been a law partner of James R. Lovell for about ten years, was appointed to represent Williams on this latter indictment. There can be no question that this appointment was made more than ten days prior to the trial, as required by the Texas statute, because there is in evidence the letter written by the district attorney on March 27, 1961, notifying Mr. Lyle that the case would be tried on April 12th instead of April 10th, as originally scheduled. The district court so found.

Williams presented to his new attorney the same defense as raised in the prior trial of November, 1960. This took place about a week prior to trial in a conference of some forty-five minutes duration. Lyle knew, of course, that his law partner had previously represented Williams on a charge of the same identical nature. He discussed it with Mr. Lovell for about an hour, during which he was informed of what the hotel operators said, and Lyle did not go to talk to them. Lyle spent one afternoon researching the law, looking into such questions as the validity of the indictment.

Of course, the law of forgery in such a case as this is not particularly difficult.

The main defenses available would be that the defendant did not sign the instrument in question, or that he signed with the authority of the purported drawer. Williams voluntarily took the witness stand in his own behalf in the second trial and stated that he signed the name of H. E. Tracy to the check, but claimed that Tracy directed him to do so as above recited.

As in the prior trial, H. E. Tracy could not be found. In the four years which have since elapsed, he has not yet been found and he made no appearance at the habeas corpus hearings either to admit or deny that he authorized his signature to the check in question. Attorney Lyle did obtain a picture of one Herman Tracy from the Dumas police department, taken on July 5, 1958, when he was in jail on a charge of drunkenness. The picture was admitted in evidence, and Williams testified that this was the H. E. Tracy who authorized him to sign the check.

Eleven witnesses testified for the state, and the record shows that Attorney Lyle cross-examined them with more than ordinary resourcefulness. An officer of the Sunray Bank, on which the alleged forged check had been drawn, testified that there never had been an account in that bank in the name of H. E. Tracy. The postmaster at Sunray, who had served in that capacity since 1944, testified that during her tenure there had never been anyone receiving mail at that office by the name of H. E. Tracy. The deputy sheriff, who had lived around Sunray for about sixteen years, testified he knew most of the people in that area, he had never heard of an H. E. Tracy, there was no such street address in Sunray as that written on the check in question, and the telephone number given on the check was not that of H. E. Tracy but was, in fact, that of a relative of the defendant by the name of F. A. Byrd. A deputy sheriff in Dumas testified he had never heard of an H. E. Tracy in the area. He knew that a Herman Tracy had been in jail in Dumas in July or August of 1958. The Dumas police chief testified there had been a Herman Tracy

in the Dumas jail for being drunk on July 5, 1958, that he had no information to indicate Herman Tracy and H. E. Tracy might be one and the same person, but he did identify the picture of Herman Tracy, with the result that it was introduced in evidence. This introduction was accomplished by Counsel Lyle on cross-examination. The sheriff of Moore County, who had served in that capacity for eleven years, had never heard of an H. E. Tracy in that county.

Williams took the stand and testified that he first met H. E. Tracy in Eloy, Arizona, he had worked with him in the wheat harvest all the way to North Dakota, he had paid Herman Tracy out of jail in 1958, that he unexpectedly and by accident met Tracy on July 30, 1960, and they went forthwith to the Texas Hotel, where Tracy gave him permission to write the checks, that they left that same day for Amarillo, where he last saw Tracy at the King Hotel, and had never seen him since.

At the conclusion of the trial, the jury convicted Williams under Article 63. Texas law mandatorily required a life sentence. The conviction was not appealed.

In this regard, the testimony of Attorney Lyle, which was credited by the United States District Judge, is as follows:

"We sat in the courtroom until after the jury had filed out late that afternoon and visited for a little while and we walked out of the courtroom and stood at the hall at the head of the stairs, halfway between the jail and the district court, and we talked about filing a motion for new trial and about the possibility of an appeal, and actually I don't suppose the whole conversation took more than about five minutes.

"He said, 'No'. He said, 'I have been in this jail too long already. I want to go down to Huntsville and get down there and they've got some boys down there that are authorities on writs of habeas corpus.' He said,

'I am going to get a writ of habeas corpus in the federal system.'

"He said, 'They've got some authorities in Huntsville on writs that will get me in the federal system and I'll get out'."

### III

After arriving at Huntsville, Williams filed his habeas corpus petition in the Federal District Court. Counsel was appointed to represent him and the District Judge heard testimony for about two days, after which the writ was denied. There was an appeal to this Court and new counsel was appointed.

It was specifically stipulated that the competency of Mr. Lyle, appointed defense counsel in the state trial court, is not attacked. The prisoner claims, however, that Lyle did not put up any defense in the state court. We shall now consider each of the specific elements involved in this serious accusation.

It was first alleged in the application for the writ that Lyle did not properly prepare for trial, and was appointed on the day of the trial, a few minutes before the trial began. The record shows, and the district court found, that Lyle was appointed some weeks before the trial, conferred with Williams a week before the trial, and spent the time already referred to in preparation for the trial. It is true that if he had not had anything else to do Lyle might have sat around in useless conversation with this defendant for days or weeks, but any competent trial lawyer of average experience will immediately recognize that forty-five minutes is sufficient time to learn of the "missing man" defense raised in this case. Cf. Gray v. United States, (1962), 112 U.S.App.D.C. 86, 299 F.2d 467, Joseph v. United States, (9 Cir., 1963), 321 F.2d 710, cert. den. 375 U.S. 977, 84 S.Ct. 497, 11 L.Ed. 422. DeRoche v. United States, (9 Cir., 1964), 337 F.2d 606.

█ █ It is next complained that Lyle did not personally interview the operators of the Texas Hotel, that this was a fatal lack of investigation. The record

shows that he did talk with his law partner, Mr. Lovell, about it for approximately an hour, during which he found out that these people instead of assisting Williams would contribute to his conviction. The record shows without dispute that Williams agreed in the November, 1960, trial that these witnesses should not be put on the stand. We cannot say that an attorney is negligent, or reckless, or lacking in devotion when he relies on direct information from his law partner of long standing concerning a case that partner had already tried, especially when there is not a word attacking the reliability of that attorney. This is particularly true in this case where the witnesses under discussion were not offered at the habeas corpus hearing to prove they would have testified in behalf of the defendant had they been called in the state court.

■ It is next complained that the attorney refused to file a motion to quash the indictment. This was a matter of professional judgment, for the determination of the lawyer, here admittedly competent, in the light of his legal knowledge. Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83, rehearing denied 350 U.S. 955, 76 S.Ct. 340, 100 L.Ed. 831. Kennedy v. United States, (5 Cir., 1958), 259 F.2d 883, cert. den. 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982. Moreover, if at that stage of Texas jurisprudence (April 12, 1962) the indictment were fatally defective it is admitted this could have been raised to the great advantage of the prisoner on an appeal which he expressly refused to pursue.

It is further complained that the attorney would not make a motion for a continuance which the applicant had prepared pro se and that the trial court refused to permit the applicant to file it. The record shows these allegations to have been untrue.

■ It is next said that the attorney failed to make an opening statement to the jury. Certainly, this was a matter of professional judgment, and in this kind of case was very likely the wiser course to follow. The best hope of defense counsel on the facts here involved was to catch the prosecution asleep or lacking evidence at some fatal juncture of the trial. It could well be considered that this was no time for defense counsel, at the very outset, in an opening statement to reveal the weak hand he had to play.

■ The next complaint is that the attorney failed to request the exclusion of the state witnesses from the courtroom while others were testifying. This might well have been done, but it is often not done, and we find no showing that this in any way prejudiced the case for the defendant.

It is next alleged that the attorney failed to make any objections to the testimony during the course of the trial, but a reading of the trial transcript promptly reveals that there was very little, if anything, which might properly have been objected to. Defense counsel is to be complimented for remembering that he who often objects, only to have his objections over-ruled, risks alienating the jury even if he does not test the patience of the presiding judge. Cf. Rivera v. United States, 9 Cir., 318 F.2d 606. Hester v. United States, (10 Cir., 1962), 303 F.2d 47, cert. den. 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82. Harris v. United States, (5 Cir., 1957), 239 F.2d 612.

The petition next alleged that defense counsel failed to make any final argument in the cause. This allegation, too, was not true, for the state trial judge testified before the federal district judge that Mr. Lyle in fact did make as effective an argument in behalf of his client as the facts permitted. The trial transcript did not report this argument because it is the practice in Texas not to have argument of counsel stenographically reported. Cf. Post v. Boles, (4 Cir., 1964), 332 F.2d 738 as to proof of proceedings by witnesses who were present at the time.

It is next complained that the attorney failed to request specially any particular

charge to the jury, but the record shows that he did consult with the district attorney and the judge in the preparation of the charge. The charge is in the record. It was very clearly drawn, well organized, and specifically informed the jury, among other things, as to exactly what was necessary to support a conviction. The jury was expressly reminded that they must not consider prior convictions in the determination of his guilt or innocence on the charge of forgery on which he was then standing trial. The jury was further told that if they believed the defendant was authorized by H. E. Tracy to sign his, H. E. Tracy's name to the check described in the indictment, or if they had any reasonable doubt thereof, they must acquit the defendant. It is our view from a reading of the instructions that the court very carefully gave the defendant the benefit of everything that could have been said in his behalf.

■ Some question was raised as to whether counsel was present when the defendant was sentenced. The record is not clear on this point. In any event, the life sentence was mandatorily fixed by law. Its imposition was a ministerial ceremony. Vitoratos v. Maxwell, (6 Cir., 1965), 351 F.2d 217. See Keth v. State, (1961), 170 Tex.Cr.R. 630, 343 S.W.2d 704, wherein the state judge imposed a sentence of from two years to life under Article 63 and the appellate court reformed it to a life sentence.

It is next complained that there was no motion for a new trial or notice of appeal, and that Counsel failed to properly advise the applicant of his rights. This contention is thoroughly exploded by the testimony already recited and which was credited by the District Judge in his findings. Counsel was denied the authority to appeal, although in the prior case appellant had been fully informed of his rights in this regard.

It must be further pointed out that while the indictment additionally charged the defendant with the offense of passing the forged instrument, defense counsel did catch the district attorney unable to prove that, and the charge was abandoned in the midst of the trial.

## IV

■■ We begin our consideration of the purely legal principles governing a case of this kind by first stating that the applicant has the burden of sustaining his allegations by a preponderance of the evidence. Walker v. Johnson, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941). It has been specifically held that a charge of ineffective assistance by appointed counsel should not be sustained unless it very clearly appears well grounded. Gray v. United States, (1962), 112 U.S.App.D.C. 86, 299 F.2d 467.

It has been held that lack of effective representation by counsel means representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and correct it. Dayton v. United States, (D.C.Cir., 1963), 115 U.S.App.D.C. 341, 319 F.2d 742, cert. den. 375 U.S. 947, 84 S.Ct. 357, 11 L.Ed.2d 277.

■ It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. Goforth v. United States, (10 Cir., 1963), 314 F.2d 868, cert. den. 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035; Bouchard v. United States, (9 Cir., 1965), 344 F.2d 872; Lyons v. United States, (9 Cir., 1963), 325 F.2d 370, cert. den. 377 U.S. 696, 84 S.Ct. 1650, 12 L.Ed.2d 738; Rivera v. United States, (9 Cir., 1963), 318 F.2d 606; United States ex rel. Cooper v. Reincke, (2 Cir., 1964), 333 F.2d 608, cert. den. 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181; Scott v. United States, (6 Cir., 1964), 334 F.2d 72, cert. den. 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed.2d 48; Lotz v. Sacks, (6 Cir., 1961), 292 F.2d 657; O'Malley v. United States, (6 Cir.,

1961), 285 F.2d 733; Nutt v. United States, (10 Cir., 1964), 335 F.2d 817, cert. den. 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180; Root v. Cunningham, (4 Cir., 1965), 344 F.2d 1; Peek v. United States, (9 Cir., 1963), 321 F.2d 934, cert. den. 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed. 2d 973.

This court has considered lack of effective counsel cases before and has laid down standards which we now reaffirm and again call to the attention of the Bar of this Circuit. We have not hesitated to grant habeas corpus relief when justified. Cf. Pineda v. Bailey, 5 Cir., 340 F.2d 162 (1965); Johnson v. United States, 8 Cir., 329 F.2d 600 (1964); MacKenna v. Ellis, 5 Cir., 280 F.2d 592 (1960).

As long ago as 1949, in Collingsworth v. Mayo, 5 Cir., 173 F.2d 695, it was pointed out that the assistance of counsel included consultation and understanding of the accused's case before trial, a consideration of his special interest in cross-examination of witnesses, and production of defensive evidence and in making of argument, and otherwise.

In 1958, in Kennedy v. United States, supra, we said:

"Ordinarily, unless a convicted prisoner on habeas corpus or Section 2255 petition alleges and proves misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interest, the defendant in a criminal case is bound by the acts of his counsel. Otherwise the courts would be required to try out the ability and competence of counsel whenever a person was convicted and thereafter complained that his lawyer was incompetent. Cf. Gray v. Ellis, 5 Cir., 257 F.2d 159."

In 1964, in Johnson v. United States, supra, the real principle was brought clearly into focus when it was said that an accused represented by appointed counsel had a right to expect a devotion at least equal to that expected from compensated counsel of an accused's own choosing.

These words are plain enough. Any lawyer of sufficient competence to be admitted to the Bar should be able to understand them. Court appointed counsel must be unswervingly faithful in the discharge of their duties to indigent clients.

This is a good time to make it plain, however, that when a defendant requests the appointment of counsel he is simply seeking the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence, no more and no less. Lawyers are not required to be infallible. If they were, law practice would soon totally disappear. MacKenna v. Ellis, (5 Cir., 1960), 280 F.2d 592, mod. 289 F. 2d 928, cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Courts themselves are often thought to err, for which they are reversed by higher tribunals.

The ability and faithfulness of an attorney is not to be judged by whether he won or lost the verdict, DeRoche v. United States, (9 Cir., 1964), 337 F.2d 606; Holt v. United States, (8 Cir., 1962), 303 F.2d 791, cert. den. 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132; Kilgore v. United States, (10 Cir., 1963), 323 F.2d 369, cert. den. 376 U.S. 922, 84 S.Ct. 681, 11 L.Ed.2d 617. Pinela v. Bailey, supra. If losing the case were proof of incompetency or infidelity, the professional career of the most vigorous attorneys would be of relatively short duration. A lawyer cannot be expected to win a hopeless case, although it may occasionally happen. Hopeless cases may always be won in the fictionalized fancy of the TV screen, but the hard facts of the real courtroom are very much to the contrary.

When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client, save in the exceptional case we have already discussed, to be bound by the presumably superior knowledge of the professional

man on whose assistance he proposes to depend.

He agrees that this attorney will be in charge of his defense in the legal battle about to begin. He should know that in the course of a lawsuit there are many critical Rubicons at which the attorney must make finely balanced, often agonizing, decisions. A legal situation frequently presents choices in many directions. Unfortunately for him, the lawyer has to decide, he realizes events may prove his decision not the best, but the merits of the decision are not altogether capable of ascertainment merely by consulting the outcome. Taylor v. United States, (8 Cir., 1960), 282 F.2d 16.

If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it. Moreover, the fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. Scott v. United States, (6 Cir., 1964), 334 F.2d 72, cert. den. 379 U.S. 842, 84 S.Ct. 81, 13 L.Ed.2d 48.

Court appointed counsel is no different to any other lawyer. He is still a lawyer, he is still practicing law, and he is no less confronted by difficult decisions of tactics and strategy. He cannot stand still and do nothing. That indeed might be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three. He must decide as his knowledge, experience, and talents best permit, and then move ahead. When he does this, that is all any lawyer can do, and the client has no right to complain of the absence of a miracle. Hickock v. Crouse, (10 Cir., 1964), 334 F.2d 95, cert. den. 379 U.S. 982, 85 S.Ct. 689, 13 L.Ed.2d 572, and Smith v. Crouse, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572, reh. den. two cases, 380 U.S. 928, 85 S.Ct. 908, 13 L.Ed.2d 817.

It is the duty of every court, state or federal, fearlessly to see that the attorney is faithful to his trust. Courts will not shirk this duty. On the other hand, we must have no qualms about rejecting the ill founded contentions of those who have enjoyed the services of court appointed counsel only to seek, without just cause, to discredit their benefactors.

Attorneys generally are greatly concerned with their professional reputations. They know that to lose a good reputation for faithful adherence to the cause of the client is not only to lose that which they should most highly treasure but is to lose their practice as well. The fearless spirit displayed by John Adams when he successfuly defended the British soldiers after the Boston Massacre is still very much alive in the Bar of this Country. It is well that this is so, because Congress may legislate and Courts may adjudicate but only the lawyers can prepare and submit the great issues of human justice under law in such manner and form that courts, in the ultimate, may be effective. Indeed, to countenance unfounded attack as an habitual part of the reward of those who sacrifice to serve indigent clients, besides being unjust and possibly damaging to the individual attorney, will inexorably lead to great damage to that effectiveness of counsel which Appellant here claims he was denied.

A real example of professional fidelity is to be found in the faithful, energetic, industrious, scholarly services rendered on behalf of this Appellant by court appointed counsel in the district court and before this Court. Their loss of the case is certainly no reflection on them. They are tendered the special thanks of the Court.

We hold that the Appellant has had the effective assistance of counsel. The findings of the District Judge to that effect are supported by ample evidence.

The judgment of the District Court, denying the writ, is

Affirmed.