**James Faldon TURNBOW, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**No. Civ. A. 2–752.**

United States District Court,
N. D. Texas,
Amarillo Division.

Feb. 20, 1970.

No attorneys for petitioner.

Allo B. Crow, Jr., Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

## MEMORANDUM OPINION

WOODWARD, District Judge.

Petitioner, James Faldon Turnbow, is in the custody of respondent pursuant to a judgment and sentence of the District Court of Hutchinson County, Texas, wherein petitioner was convicted on July 18, 1957, after a plea of not guilty, of the felony offense of rape. Punishment was assessed by the jury at confinement in the State Penitentiary for a term of not less than five years nor more than ninety-nine years. Although petitioner states that he appealed from the conviction in 1957, the record indicates that no appeal was taken. Petitioner apparently has confused an appeal with his application for writ of habeas corpus.

Petitioner presents his second application for writ of habeas corpus to this Court. The first application, filed as Civil Action No. 2–663, was dismissed by order of this Court on February 18, 1969. This second application, which is here under consideration, contains new allegations as well as a repetition of the allegations in the first application. This piecemeal approach adopted by petitioner constitutes an abuse of the habeas corpus procedure and normally would justify dismissal. Haith v. United States, 330 F.2d 198 (3d Cir. 1964). However, it appears that petitioner intended to have this second application serve as a motion for rehearing or an appeal from the Court's first decision; consequently, the Court has treated it as such and has re-examined the allegations presented for a second time as well as its order in Civil Action No. 2–663. After re-examination, the Court has reached the conclusion that its order in Civil Action No. 2–663, a copy of which is appended to this opinion, was correct and therefore now deems it unnecessary to cover the same issues for the second time. Accordingly, the Court will examine, in this case only, the new allegations raised by petitioner, which are:

1. That petitioner's case was publicized so extensively by the news media that he was denied a fair trial by an impartial jury, free from outside influences, as required by due process.

2. That perjured testimony was employed by the prosecution in petitioner's case to secure his conviction, in violation of due process requirements.

In an attempt to answer petitioner's first allegation, counsel for respondent conducted an investigation into the news coverage surrounding petitioner's trial. He was able to find only three news articles relating to the case. After these news articles were presented to the Court, petitioner informed the Court that there was at least one more article relating to his case. The Court then conducted an independent investigation. After all possibilities were exhausted, the following articles, copies of which are appended to this opinion, were uncovered:

1. Borger News-Herald, February 1, 1957: About the arrest and confession of petitioner.

2. Amarillo Globe-News, February 2, 1957: About the arrest and charge of petitioner.

3. Borger News-Herald, July 17, 1957: About selection of the jurors in petitioner's case.

4. Borger News-Herald, July 19, 1957: About conviction and sentence of petitioner.

5. Amarillo Globe-News, July 20, 1957: About conviction and sentence of petitioner.

The last two articles were printed after the petitioner had been convicted and could not have influenced the trial.

■ The newspapers mentioned above are the newspapers of general distribution in Hutchinson County, Texas, where petitioner was tried. An examination of the stories that appeared in these papers clearly shows that the community was not saturated with inherently prejudicial publicity before or during petitioner's trial. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1965). In fact, the only news article that possibly could have been prejudicial was the article published by the Borger News-Herald on February 1, 1957. In that story, petitioner was reported to have confessed. However, this article was published at least five months before the trial and the probability that it alone could have saturated the community with prejudicial publicity is too unlikely to be considered. Finally, it should also be observed that, if petitioner or his appointed counsel thought the news media had so inflamed the community that a fair trial was not possible, there should have been a motion for a change of venue. However, petitioner neither alleges nor does the record reflect that such a motion was ever made to the State Court. Therefore, the Court is of the opinion that petitioner was afforded a fair trial free from outside influences and that his first allegation is without merit.

■ In his other allegation, petitioner claims a denial of due process based upon the existence of prejudicial perjured testimony. He asserts specifically that his conviction was predicated upon his daughter's testimony, which was perjured at the instigation of the prosecuting attorney. However, an examination of the application reveals no factual allegation to support petitioner's contention. Instead, the Court is able to find only conclusionary statements which are completely insufficient to show the denial of any federal right. Harris v. Ellis, 204 F.2d 685 (5th Cir. 1953). Further, where there has been no appeal from a judgment of conviction, specific factual allegations are especially necessary when allegations of perjury are made. Gingrich v. Oberhauser, 305 F.Supp. 738 (C.D.Cal.1969). In light of these circumstances, the Court finds no merit in petitioner's second allegation.

It is accordingly ORDERED and DECREED that petitioner's application for writ of habeas corpus be and is hereby denied.

The Clerk shall send copies of this order to the petitioner and the attorney for the respondent.

## APPENDIX I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMES FALDON TURNBOW,
              Petitioner

vs.

DR. GEORGE J. BETO, DIRECTOR,
TEXAS DEPARTMENT OF CORRECTIONS,
              Respondent

CIVIL ACTION NO. 2–663

## ORDER

Petitioner, James Faldon Turnbow, is in custody of the Respondent pursuant to a judgment and sentence of the District Court of Hutchinson County, Texas, wherein the petitioner was convicted on July 18, 1957, on his plea of not guilty to the felony offense of rape. Punishment was assessed by the jury at confinement in the State penitentiary for a term of not less than five years nor more than ninety-nine years.

Giving a liberal interpretation to the petitioner's application in this Court, the Court finds that the petitioner has alleged the following grounds for relief:

1. That he was deprived of his constitutional rights by being forced to sign a statement which he could not read, not having been previously warned of his rights and having been denied the right to talk to an attorney.

2. That he was subjected to cruel and unusual punishment by the arresting officers who allegedly beat him, cursed him, and threatened his life, and later by jail inmates who were allegedly acting under the direction of the officers.

3. That he had been arrested without a warrant and without allowing him to confront the witnesses against him.

4. That he was not allowed an examining trial.

5. That he was denied counsel for three and one-half to four months.

6. That his court-appointed counsel was "inefficient."

In regard to the petitioner's ground for relief based upon an alleged coerced confession, the petitioner has not alleged, and the record fails to show, that the statement taken from the petitioner was ever introduced into evidence before the Court or the jury. While the petitioner's allegations would cast some doubt on the admissibility of the statement, the petitioner would not have been denied any of his constitutional rights unless the statement had been introduced or used during his trial. Since the petitioner has failed to allege that the statement was used during his trial, this ground for relief is insufficient and should be dismissed.

The petitioner has alleged that he was cursed, beaten and threatened by the arresting officers and later by the inmates of the jail acting under the direction of the officers. Even assuming that the petitioner's allegations are true, such beating or intimidation could not in and of itself be a basis for a collateral attack on the judgment of conviction. See Green v. Bomar, 329 F.2d 796, (6th Cir. 1964). Even coupled with the petitioner's allegation that the beating and intimidation resulted in a coerced statement, the petitioner has still failed to raise a gound for setting aside his conviction since he has failed to allege or otherwise show that the statement was ever introduced into evidence at his trial. There is no direct allegation or inference that the alleged beatings affected the validity of the conviction itself and, therefore, this ground for relief should be dismissed.

The petitioner has alleged that he was arrested without a warrant and was not confronted with the witnesses against him. An illegal arrest standing alone and without an allegation of facts showing some sort of prejudice is not a sufficient basis for federal habeas corpus relief from a final conviction. Goodspeed v. Beto, 341 F.2d 908, (5th Cir. 1965); Pappillion v. Beto, 257 F.Supp. 502, (S.D.Tex.1966). Furthermore, the petitioner's allegation that he was denied his right to confront the witnesses against him is conclusionary and unsupported by any allegation of fact. Therefore, these grounds alleged by the petitioner are insufficient to raise a federal question and should be dismissed.

The petitioner has alleged that he was not allowed an examining trial. A

preliminary hearing before a magistrate is not a federal constitutional right which, if denied, requires federal habeas corpus relief, Pappillion v. Beto, 257 F.Supp. 502, (S.D.Tex.1966); Collins v. Beto, 245 F.Supp. 639, (S.D.Tex.1963) and cases cited therein, and therefore this ground should be dismissed.

As to the petitioner's allegation concerning the failure to appoint counsel for three and one-half (3½) to four (4) months, there is no allegation that the failure to appoint counsel was attributable to the State, or that the absence of counsel for that period of time prejudiced the petitioner. Indeed, the petitioner has failed to allege that he was indigent, or that he requested counsel, or that he desired counsel during that period of time, or that he was not advised of his right to counsel. The mere allegation of absence of counsel is wholly insufficient to raise a ground for federal habeas corpus relief, and this ground alleged by the petitioner should be dismissed.

Petitioner's final ground alleged is that his counsel was "inefficient." The record reflects that two attorneys were appointed to represent the petitioner at trial. As a basis for his belief that his counsel was inefficient, the petitioner has alleged:

1. That the attorneys took the petitioner's W–2 forms to file an income tax return but failed to return the W–2 forms upon request.

2. That the attorneys refused to call certain witnesses who were named by the petitioner and whose testimony allegedly would have helped to establish an alibi.

3. That the attorneys refused to introduce a bus schedule that would have helped to establish the petitioner's defense of alibi.

4. That the attorneys used the same slip of questions to cross-examine the complaining witness as was used by the District Attorney.

5. That the attorneys elicited the same story from the complaining witness as did the District Attorney.

6. That the attorneys "stopped the trial to take the child from the stand to talk with her, and get her to say what they wished her to say."

These allegations of fact, if taken as true, and if considered individually or in the aggregate, are wholly insufficient to show any incompetence or ineffectiveness on the part of petitioner's court-appointed attorneys. Relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only where the trial was a farce, or a mockery of justice, or was shocking to the conscience, or where the purported representation was only perfunctory, in bad faith, a sham, a pretense, or where counsel was without an adequate opportunity to confer with the petitioner and to prepare a defense. Williams v. Beto, 354 F.2d 698 (5th Cir. 1965); Quarles v. Dutton, 379 F.2d 934 (5th Cir. 1967). The facts alleged by the petitioner fail to raise even an inference that the representation afforded by his attorneys was ineffective or inefficient, much less that the representation was a sham, a pretense, or shocking to the conscience, and therefore this ground for relief should be dismissed.

Therefore, the Court finds that the grounds alleged by the petitioner are insufficient to raise a federal question, and the petitioner's application should be dismissed.

It is, therefore, ORDERED that the petitioner's application for writ of habeas corpus is hereby dismissed.

The Clerk shall send copies of this Order to the petitioner and the attorney for the Respondent.

SIGNED this the 18th day of February, 1969.

APPENDIX II

## Man Charged With Assault On Daughter

Charged with raping his eight-year-old daughter in a Main Street hotel room earlier this week, James F. Turnbow of Odessa was hauled off to the county jail in Stinnett this morning to await action by the grand jury. The 40-year-old welder is being held without bond.

Turnbow confessed that he had experienced sexual relations with his daughter Teresa early this week after arriving by bus from Odessa. The accused said he checked into a hotel on North Main and slept with his daughter because there was only one bed in the room.

After working the next day, Turnbow said he met his daughter in a Borger cafe and returned to the hotel. Describing the incident in minute detail, he said he drank about half a bottle of vodka and then went to bed. Later, the man said he woke up and realized that he had had relations with the girl.

Following a tip by the suspicious hotel manager, Borger police later apprehended Turnbow in a restaurant. He was charged with statutory rape before Judge Jim Miller and was bound over to the grand jury without bond.

In his statement, the Odessan said he had sexual experiences with the girl four times during the past year, including the incident this week. Turnbow is married to Velma Turnbow of Odessa and has a 12-year-old boy and another daughter, 7.

Borger News-Herald, dated February 1, 1957
[A1308]

## Odessa Man Is Held in Assault

BORGER, Feb. 1 (Special) — An Odessa man charged with raping his 8-year-old daughter in a Borger hotel earlier this week is in the county jail at Stinnett awaiting grand jury action.

James F. Turnbow, 40-year-old welder, is being held without bond.

Following a tip from the suspicious hotel manager, Borger police later apprehended Turnbow in a restaurant. He was charged with statuatory rape before Justice of the Peace J. D. Miller.

Turnbow's wife and two other children, a 12-year-old boy and another daughter, 7, are in Odessa.

Amarillo Globe-News, dated February 2, 1957
[A1309]

## JURORS FOR TURNBOW TRIAL PICKED TODAY

A panel of 12 jurors is being selected today for the trial of James F. Turnbow, 40-year old Odessan who is accused of raping his eight-year old daughter at a Borger hotel.

Four jurymen had been picked by noon today and eight others were expected to be chosen this afternoon. Details of the trial will appear in the News-Herald when the trial begins.

Borger News-Herald, dated July 17, 1957
[A1310]

# Borger News-Herald

THE CARBON BLACK CENTER OF THE WORLD

Vol. 31 — No. 206    14 Pages    Borger, Texas, Friday, July 19, 1957    (AP, UP, NEA)    5 Cents

# Turnbow Given 99 Years

**By ED DESWYSEN**
**News-Herald Staff Writer**

Sordid details of a father's continued assault on his daughter since she was a toddler in kindergarten brought tears to the eyes of a blushing 84th District criminal jury Thursday as it sentenced James F. Turnbow to 99 years in the state penitentiary.

Turnbow, an expert welder from Odessa, sat stone-faced through his day-long trial for rape as a parade of witnesses described in detail an orgy last January in a Borger hotel which involved the then eighth-year-old Theresa Turnbow, her father and two "guests."

Turnbow grinned as district attorney Bob Gallaway told the jury: "No man is more deserving of the electric chair."

The jury, composed of eight men and four women, was startled when the key witness for the prosecution —Theresa—walked into the courtroom to testify against her father. One male member of the panel broke into tears at the sight of the girl as she walked to the witness stand.

Sipping on a cup of water in the sweltering room and fidgeting in her chair, the precocious third-grader told how her father had first attempted to assault her when she was five years old and then related a long series of sexual experiences with her father and other men and boys.

Speaking casually and maturely, the child broke only once during her testimony.

Physicians who examined the girl following attacks here January 27 and 28 said she was physically as mature as a married woman.

Turnbow and the girl arrived here Sunday, January 27 and registered

at a Main Street hotel. Testimony showed that the first assault took place that night and was followed by an orgy involving three men on Monday night.

Theresa described her father's Monday night "guests" as Joe and Dynamite and said she submitted to each at least once. The four entered the hotel from a back door in order to avoid suspicions of the manager.

On Tuesday, the girl said her father brought a woman to the room and entertained her in her presence. Theresa said she had been offered drinks of alcoholic beverages by her father but that she had refused because she said she went to church and didn't think it was right to drink.

Court appointed attorneys had little evidence to support Turnbow's plea of not guilty and did not call a defense witness. Turnbow did not take the stand in his own favor.

The jury retired at 6:27 p.m. and returned in less than half an hour with a guilty verdict. The jury also set the penalty at 99 years.

Parole under a 99 year sentence is more difficult to obtain than under a life term. Minimum sentence would have been five years.

Two other rape cases, one similar to Turnbow's involving a Sanford father, are due for trial next week in Judge Jack Allen's 84th District Court.

**JAMES TURNBOW**
99-Year Sentence

Borger News-Herald, dated July 19, 1957

[A1311]

---

RDAY MORNING. JULY 20. 1957

# Man Sentenced To 99 Years

NEWS JUL 20 '57

For Assault

BORGER, July 19—James F. Turnbow, 40, an Odessa welder, was sentenced to 99 years in the state penitentiary Thursday by an 84th District Court jury which found him guilty of raping his 9-year-old daughter.

Turnbow sat stone-faced as witnesses described in detail the incident involving his daughter and two of Turnbow's men friends last January at a Borger hotel. Evidence also revealed the welder had made assaults on his daughter since she was 5 years old.

[A1312]

Arriving in Borger Sunday Jan. 27, testimony revealed Turnbow and his daughter registered at a Main street hotel where the first assault occurred that night followed by the incident involving three men the following night.

The jury, composed of eight men and four women, was shocked to hear of the acts that led to the arrest of the child's father. Turnbow was arrested the third night after a hotel clerk became suspicious of the three men and one girl.

On the third night the girl told the court her father brought a woman to the room where he entertained the woman in her presence. The child said she was offered liquor but refused because she said, "She went to church and didn't think it was right to drink."

Siping a cup of water in a sweltering courtroom the third-grade pupil told how her father had first attempted to assault her when she was 5-years-old and then related a long series of intimate experiences with her father, other men and boys.

Speaking casually and maturely the child broke only once during her testimony.

Court appointed attorneys had little evidence to support Turnbow's plea of not guilty. No defense witnesses were called to testify and Turnbow failed to take the stand in his own defense.

The jury retired at 6:27 p.m. and returned in less than half an hour with the guilty verdict which carried the 99-year penalty.

The girl is in custody of Hutchinson County juvenile authorities. Her mother, believed living in Odessa, failed to appear at the trial, which brought tears to the eyes of the jury.

Amarillo Globe-News, dated July 20, 1957

HALBERT O. WOODWARD
United States District Judge