Lloyd Gene **ELLIS**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

May. 5, 1971.

Edward H. Keith, Bangor, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, POMEROY and WERNICK, JJ.

POMEROY, Justice.

Lloyd Gene Ellis here complains:

1. The Court erred in finding that petitioner's plea of guilty was voluntarily and understandingly made.

2. The Court erred in refusing to find that petitioner was denied due process of law and the equal protection of law and the full and effective assistance of counsel for his defense.

3. The Court erred in refusing to find that petitioner was convicted and sentenced in violation of the Constitution of the United States and the Constitution of the State of Maine because the indictment fails to set forth all the elements necessary to constitute the offense intended to

be charged in that it does not allege the owner of the building broken into and does not allege the owner of the property claimed to have been stolen.

4. The Court erred in finding that petitioner was not prejudiced by the failure to advise him of his right of appeal from the denial of his motion to dismiss the indictment.

All these complaints follow the denial of his writ of habeas corpus (post-conviction) after hearing.

An examination of the Exhibits which are before us, reveals Ellis has been convicted of felonies in Maine, Massachusetts, Pennsylvania and West Virginia. He has at one time or another served prison sentences in all these States.

In the matter which occasioned the habeas corpus, the appeal from which is before us, he was indicted for the crime of breaking, entering and larceny in the nighttime.

The Exhibits demonstrate at the time the crime was committed by Ellis and others, some were armed. While the accomplices were being apprehended after an attempted get-away from the burglary, an officer was shot and wounded.

The Presiding Justice found petitioner to be indigent. The petitioner named the attorney he wished to represent him. Acting on the petitioner's request, the Court made the appointment.

A motion to dismiss the indictment on the ground it was insufficient in law to charge the offense was filed on petitioner's behalf.

Upon this motion being denied a plea of not guilty was entered and the case went to trial.

During the trial the petitioner, who had earlier been admitted to bail, absented himself from the trial. This caused a withdrawal of the case from the jury. Petitioner was later apprehended in another County and returned to the Court in custody.

Shortly thereafter, a new jury was impaneled and a new trial was commenced. After three witnesses had testified, the petitioner retracted his plea of not guilty and entered a plea of guilty.

After a searching examination as to the voluntariness of the plea, the guilty plea was accepted. The petitioner was thereupon sentenced to serve not less than five years nor more than fifteen years in the Maine State Prison. He now stands committed in execution of this sentence.

We will discuss the petitioner's complaints of error in the order in which they are presented in the Statement of Points on Appeal.

At the hearing on the petition for habeas corpus (post-conviction) the petitioner testified as follows concerning the reason for his change of plea.

"Q Now, Mr. Ellis, will you tell the Court why you changed your plea from not guilty to guilty?

A Well, like I stated, I figured I was fighting the Court, Mr. Paine, the prosecuting attorney, and Mr. Winchell. So after he had, Pelletier and the State Trooper and him were placed on the stand, we went into that back room back there, and he said, 'It don't look good for you.' That was then they had the habitual, the breaking, entering and larceny and the habitual.

Q When you refer to 'habitual,' what do you mean by that?

A From all I can make out, I was told that you'd get quite a pile of time for it.

Q Did you understand this was another charge?

A I was worrying mainly about the first one. I didn't pay no attention

about the second one. I had it in my mind, I can't doubt that, and say I didn't. But I went in there and after seeing what happened on the stand with the witnesses, I went in there and I asked him, I said, 'What would happen if I pleaded guilty?' I says, 'What about the habitual?' And he left and I presume he talked to Paine.

Q Just tell us, he left and he came back?

A. He come back.

Q What did he say?

A He said that in 9 out of 10 cases, he says, from his knowledge, that if the first case is taken care of, then the second one is usually disposed of.

Q When you refer to the second one, what did you understand that was?

A The habitual."

At the hearing held by the Presiding Justice, when the guilty plea was accepted, the petitioner stated over and over again in response to questions asked by the Court in various ways that he was making a voluntary plea with full understanding of the nature of the charge, without any threats or promises, and that his guilty plea was made because he was, in fact, guilty and he realized on the evidence, the jury could not find otherwise.

He did indicate that his wife had received threats of some sort but made it clear that these threats were allegedly made by accomplices in his criminal acts. The exact nature of the threats was not revealed to the Court because the petitioner refused to answer the Court's questions concerning them.

After the first intimation that the petitioner felt his wife had been threatened, the Court made very careful inquiry to determine whether or not these threats, even though they were allegedly made by accomplices, had any part to play in the petitioner's decision to change his plea from not guilty to guilty.

The petitioner insisted over and over again that nothing had induced the plea but his recognition of his guilt and his judgment that a jury could do nothing but return a finding of guilty.

The Court below was amply justified in finding his plea of guilty was voluntarily entered with full knowledge and understanding of his right to proceed with the trial and of the consequences of the entry of the guilty plea.

■ As to the second Point raised, it too is entirely lacking in merit. It deserves greater comment, not because it has any merit but because it so clearly demonstrates the injustice which was done to a well reputed, honorable member of the Bar by this petitioner who has lived so long and so consistently outside the law.

It is clear from the record, some time prior to the time the Court appointed counsel, the petitioner's wife, in company with some other relative, came to the office of the attorney in Bangor and there undertook to obtain the attorney's services on behalf of her husband, the petitioner. Financial arrangements were discussed and the petitioner's wife left the office after assuring the attorney that means were available to complete the retainer. Nothing further was heard by the attorney until he received a telephone call requesting that he come to the Courthouse. When he arrived he was asked by the Court if he would undertake representation of the petitioner by appointment of Court, the Court having found the petitioner to be indigent.

In the petitioner's presence the Court informed the attorney that the petitioner himself had requested the appointment of this particular attorney. The appointment was accepted and the attorney undertook preparation for trial of the case.

The attorney obtained little cooperation from the petitioner. Whenever the petitioner was asked to prepare a written statement of his version of the events of the night described in the indictment, so that the attorney could have it available during his preparation for the trial, the petitioner refused, because, in his attorney's words, "he didn't trust me and something to the effect that did I think he was foolish."

The Court below was justified in concluding on the basis of the evidence before him that petitioner became disenchanted with the attorney when the attorney refused to "make up a defense" for him.

The petitioner now says he was denied the full and effective assistance of counsel!

Several times during the period the court-appointed attorney was attempting to represent the petitioner's interests, consistently with acceptable ethics, the petitioner told counsel he had no confidence in him.

It is now apparent this lack of confidence resulted from counsel's refusal to manufacture a defense.

At petitioner's request the attorney informed the Court of petitioner's desire to have the attorney dismissed from the case and new counsel appointed. This, the Court very properly refused to do, having found as a fact that the complaint concerning the competence of the attorney was not justified.

An attorney representing an indigent defendant by appointment of Court has the responsibility of giving his client all the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence.[1]

He "is bound by all fair and honorable means, to present every defense that the law of the land permits, to the end that

no person may be deprived of life or liberty by due process of law."

Canon 5, American Bar Association Canons of Professional Ethics.

We are completely satisfied, as was the Single Justice, that petitioner's attorney conducted the petitioner's defense with skill, diligence and in complete good faith. His conduct was at all times consistent with the highest traditions of the Bar.

This (Canon 5, American Bar Association Canons of Professional Ethics) "does not require an attorney, whether retained or appointed, to stultify himself by advancing arguments known by him to be without merit."

Wood v. United States, 357 F.2d 425, CCA 10 (1966).

■ The indictment here under attack follows exactly that of Form 11 of the Maine Rules of Criminal Procedure.

Rule 58, Maine Rules of Criminal Procedure declares:

"The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."

The indictment alleges the petitioner broke and entered the office of the Fuel Mart, a corporation. The indictment further alleges ownership of the property taken in these words, "the Fuel Mart, a corporation, of its property."

This Point of Appeal is without merit.

■ The final Point urged upon us by this petitioner is that it was error for the Single Justice to find the petitioner was not prejudiced by the failure to advise him of his right of appeal from the denial of his motion to dismiss the indictment.

The threshold question (Is there a right of appeal from denial of a motion to dis-

---

1. See: Williams v. Beto, 354 F.2d 698, CCA 5 (1965).

miss an indictment after a guilty plea has been entered?) was only recently decided by this Court. Dow v. State, Me., 275 A.2d 815, 1971.

It is clear from the decision above cited the sufficiency of an indictment is the proper subject of review on appeal even after the entry of a guilty plea. Because there was such right of appeal, it now appears the attorney should have so advised him.[2]

We recommend in the future in situations such as this where an indigent defendant is represented by court-appointed counsel, the Court after entry of a guilty plea should advise the defendant of his right to appeal the denial of the motion to dismiss.[3]

In this case, however, we repeat what we said in Dow v. State, supra:

2. Until *Dow*, there was serious question if such right existed.

3. Rule 37(c) Maine Rules of Criminal Procedure, refers to action which must be

" * * * the mere failure of counsel to inform an accused of his right to appeal in a case where the prosecution of such appeal would have been patently frivolous, did not amount to denial of competent counsel, nor did it constitute a denial of due process affording a basis for post-conviction relief."

There was no prejudice resulting to petitioner. He takes nothing by this Point of Appeal.

The entry must be,

Appeal denied.

MARDEN, J., sat at argument but retired before this opinion was adopted.

WEATHERBEE, J., did not sit.

taken by the Court *after trial*. In this case there was no trial, in that although the trial had commenced it was terminated by the guilty plea rather than a finding by the jury.