Edward Woodie S I DDENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44531.

Court of Criminal Appeals of Texas.

Jan. 26, 1972.

Rehearing Denied March 1, 1972.

Grady Hight, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., Jack Ray and John Garrett Hill, Asst. Dist. Attys., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of robbery while exhibiting a firearm. The jury assessed the punishment at fifty years.

The sufficiency of the evidence to show possession of the property taken is challenged.

Carl Edward Brown, the person alleged to have been robbed, testified that he was a relief man for the 7–11 Stores and that when someone was ill he would usually take charge of and run the store. He testified that on the day in question he had care, custody and control of the money taken in the robbery by appellant.

Charles E. Hodges testified that he had a part-time job at the store and was working on the day of the robbery and that it was Carl Brown's duty to take care of the money after he arrived.

The testimony of both of these witnesses reflects that appellant came in, asked for a package of cigarettes, exhibited a pistol and demanded the money from Hodges who was at the cash register. Hodges complied. The appellant ordered both Brown and Hodges to the back of the store and then left with the money.

The following day Hodges, while at a service station, saw the appellant and called the police. A short time later they arrested the appellant.

At the penalty stage of the trial two prior convictions for robbery against the appellant were proved.

It is contended that the proof shows that Hodges had possession and control of the money and not Brown, because Hodges was the one who handed the money to the appellant from the cash register.

Under Article 1408, Vernon's Ann.P.C., a conviction may be had for robbery where the property is taken from the possession or from the person of another.

In Rayford v. State, Tex.Cr.App., 423 S.W.2d 300, it was shown that the property was not taken from the person alleged to have been robbed. This Court held that the conviction for robbery could be had where the property was taken from the possession of the injured party. See Blankenship v. State, 166 Tex.Cr.R. 51, 310 S. W.2d 579.

Two or more people may jointly possess property.

We hold that the proof in the present case was sufficient to authorize the jury to conclude that the money was taken from the possession of Brown as alleged in the indictment.

Complaint is made that appointed trial counsel did not conduct the trial as the appellant wished. Counsel was appointed January 8, 1969. The trial started March 19, 1969. He alleges that counsel did not confer with him but once before the trial

and that counsel did not file motions for change of venue and for a continuance. He complains that counsel did not object to identification evidence and that even though four alibi witnesses were present, only one was called. He also complains that counsel did not ask for a sanity hearing. Finally, at the penalty stage of the trial, he complains that counsel would not follow his instructions and continue to argue innocence instead of the amount of time that the jury was to assess. These matters will be considered in discussing effective assistance of counsel.

After the amended motion for new trial was filed, the appellant asked for and was appointed other counsel for the appeal. Some seventeen months later an amended and supplemental motion for new trial was heard. Then there was a recess for six weeks. After so long a time, trial counsel did not remember all of the details of the trial. The attorney testified he did not call some of the proposed alibi witnesses because he discussed their criminal records and their interest in the case with the appellant, and they agreed not to call them. The only reason given for a change of venue was that in 1964 the appellant married while in jail awaiting trial for robbery and this was given some publicity. It was also the impression of the attorney that he and appellant agreed not to file a motion for change of venue. Counsel could not recall discussing a motion for continuance. No formal motion was filed, but they did get one or two continuances.

Even with all the extra time there is no attempt to show harmful or reversible error for the failure to place other witnesses on the stand or to file motions for continuance and for change of venue.

The appellant, at the hearing on a supplemental motion for new trial, complained that no sanity hearing was held prior to the trial to test his competency to stand trial.

Before the trial a motion for a psychiatric examination was granted and the appellant and counsel were authorized to select a psychiatrist of their choice. The record shows that before the trial an examination was conducted and the report showed that the appellant was competent to stand trial. An order was issued December 2, 1969, so that the appellant could undergo a complete psychiatric examination at John Peter Smith Hospital in Fort Worth.

The report to the judge after this examination showed that the appellant reported to the doctor that he was mentally ill because he would do unlawful acts and would make little or no effort to avoid being apprehended. He also reported to the doctor that he cut his arms while in jail and the appellant considered this behavior abnormal. The doctor found that the appellant was then, on December 4, 1969, able to distinguish between right and wrong; that he was able to understand the nature and consequences of the act charged against him and was able to participate in his defense. He further found no need for psychiatric hospitalization.

On August 24, 1970, another psychiatric examination was ordered. The order recites that an appointment had been made with Dr. Herbert Rush. It is not shown if Dr. Rush conducted an examination.

October 26, 1970, still another order for a psychiatric examination was entered. Dr. Ralph Campbell, who had examined the appellant December 4, 1969, was named to conduct another examination. He reported that the appellant asked why he was being examined by him again. Appellant informed the doctor that he would not participate in an interview. Dr. Campbell reported that he made no observations or findings that would change the result of his earlier findings that the appellant was mentally competent to stand trial at the time of the offense.

March 4, 1970, a hearing was held to determine if the appellant was sane at the

time of the hearing. The jury found that he was sane.[1]

The evidence other than committing crimes and not taking sufficient precaution to prevent apprehension was that the appellant had a self-inflicted wound while serving time in the Texas Department of Corrections.

No evidence of insanity was offered at the time of the offense during the trial on the merits.

■ The appellant, long after the trial, wanted the court to submit an issue to the jury on the question of his insanity at the time of the offense. The court properly refused this under Article 46.02, Section 4, Vernon's Ann.C.C.P.

The appellant filed pro se motions and briefs during his trial and on appeal. It appears from these that he understood the proceedings against him. He appeared to be well acquainted with criminal procedure.

■ We have carefully reviewed the entire record to see if the appellant was adequately represented. We find that counsel requested and obtained an order for a psychiatric examination. A motion for discovery and inspection of the evidence was filed. He received a list of the witnesses from the district attorney. A written designation of the physical evidence which included a .38 caliber revolver and other items in possession of the State was given the appellant with the offer to make them available for inspection. Counsel thoroughly cross-examined the State's witnesses concerning the possession or control of the money taken in the robbery. He cross-examined the witnesses to create a doubt on their identification of the appellant as the robber. The appellant's testimony shows that counsel talked to him about the case twice and an associate talked with him once. Counsel made a motion for instructed verdict and made an argument to the jury.

The appellant is in the anomalous position of contending that he was insane and could not assist counsel and at the same time contending that the case should be reversed because counsel would not follow his directions in conducting the trial. Counsel on appeal asks this Court to set down guidelines for appointed counsel. They need to know whether appointed counsel or the defendant himself should make the decisions regarding the conduct of the trial. In Williams v. Beto, 354 F.2d 698 (5th Cir. 1965), Judge Coleman spoke for the Court on this issue. After stating that the indigent accused has a right to expect equal devotion from appointed counsel as any other accused would expect from compensated counsel, he said:

"This is a good time to make it plain, however, that when a defendant requests the appointment of counsel he is simply seeking the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence, no more and no less.

"* * *

"When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client, save in the exceptional case we have already discussed [where counsel is clearly inadequate], to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend.

"He agrees that this attorney will be in charge of his defense in the legal battle about to begin. He should know that in the course of a lawsuit there are many critical Rubicons at which the at-

---

1. The trial judge also submitted an issue for the jury to determine if the appellant was laboring under a defect of reason from a disease or impairment of the mind so that "he is unable to assist his counsel in preparation of his defense." The jury did not answer this issue. The appellant asked for that part of his affidavit to be dismissed and it was.

**24**

torney must make finely balanced, often agonizing, decisions. A legal situation frequently presents choices in many directions. Unfortunately for him, the lawyer has to decide, he realizes events may prove his decision not the best, but the merits of the decision are not altogether capable of ascertainment merely by consulting the outcome. (citations omitted)

"If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it. Moreover, the fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. (citations omitted)

"Court appointed counsel is no different to any other lawyer. He is still a lawyer, he is still practicing law, and he is no less confronted by difficult decisions of tactics and strategy. He cannot stand still and do nothing. That indeed might be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three. He must decide as his knowledge, experience, and talents best permit, and then move ahead. When he does this, that is all any lawyer can do, and the client has no right to complain of the absence of a miracle. (citations omitted)

"It is the duty of every court, state or federal, fearlessly to see that the attorney is faithful to his trust. Courts will not shirk this duty. On the other hand, we must have no qualms about rejecting the ill founded contentions of those who have enjoyed the services of court appointed counsel only to seek, without just cause, to discredit their benefactors." Id., at 705–706.

We are in agreement with the reasoning and result reached by Judge Coleman.

We hold that the appellant had effective assistance of counsel. The fact that counsel did not ask for a hearing to determine appellant's competence to stand trial does not show reversible error. There was not enough evidence then and not enough on the motion for new trial, or anywhere in the record, to show or indicate he was incompetent at the time of trial. See Valdez v. State, 475 S.W.2d 786.

The judgment is affirmed.

MORRISON, J., not participating.