Harold Ellison **NICHOLAS**, Petitioner,

v.

C. C. **PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 67–C–68–A.

United States District Court
W. D. Virginia,
Abingdon Division.

Oct. 12, 1967.

Reno S. Harp, III, Asst. Atty. Gen., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus by Harold Ellison Nicholas, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241. The petition, filed *in forma pauperis*, was ordered transferred to this court from the United States District Court for the Eastern District of Virginia on July 3, 1967.

On March 7, 1957 petitioner Nicholas was tried in the Circuit Court of Bland County, Virginia, on charges of first degree murder, armed robbery and grand larceny. Petitioner was represented by court-appointed counsel, Mr. Crockett Hughes, a lawyer of twenty-five years experience at the time of the trial. After a trial in which a jury had been waived and a plea of guilty entered, the following sentences were imposed: a life sentence on the first degree murder indictment, a life sentence on the armed robbery indictment and a three year sentence on the indictment for grand larceny. The petitioner is presently serving the concurrent life sentences.

The record shows that following his conviction on March 7, 1957 no appeal was taken to the Virginia Supreme Court of Appeals. However, on January 19, 1966 that court granted Nicholas' request for a writ of habeas corpus returnable to the Circuit Court of Bland County. On June 2, 1966 the Circuit Court of Bland County held a hearing wherein the petitioner was represented by court appointed counsel. After hearing the evidence the court denied the relief requested, dismissed the writ and ordered

the petitioner returned to prison. Following the requisite notice of appeal and assignments of error, this judgment was appealed to the Virginia Supreme Court of Appeals. On March 7, 1967 the Virginia high court denied the writ of error.

■ Nicholas lists four contentions in his present attack upon the constitutional validity of the Bland County convictions:

(1) he was denied the right to appeal his case because of his and his family's "poverty."

(2) his court appointed counsel afforded him ineffective assistance in the preparation and presentation of his case.

(3) he was the victim of three "illegally obtained" confessions in that petitioner was not advised of his right to counsel during police interrogation.

(4) he was not afforded a mental hearing or examination pursuant to Virginia statutory provisions even though there was "an obvious mental instability."

Although Nicholas' petition lists these four allegations, it should be noted that it was in the context of the ineffective assistance charge that the latter two allegations appeared in the state habeas corpus proceedings: counsel failed to make timely objection to the introduction of "illegally obtained" confessions into evidence and counsel failed to advise the petitioner of his possible right to a mental hearing or to move the court for a mental hearing and possible commitment. Consequently, allegations three and four are not independent grounds of attack raised for the first time in this court. Rather, they merely particularize wherein counsel failed to afford petitioner effective assistance. It is therefore apparent that the petitioner's present allegations were before the Virginia courts in the state habeas proceedings and the appeal taken therefrom. For this reason the petitioner has exhausted his presently available state remedies as required by 28 U.S.C. § 2254, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and it is appropriate at the present time

for this court to exercise its jurisdiction of the petitioner's case.

Turning to the petitioner's charge that he was "denied" the right to appeal his case because of his and his family's "poverty," the transcript of the state habeas corpus proceeding, pages 43–45, clearly shows that *before* petitioner's parents had been informed of costs and fees necessary to perfect an appeal, they advised Mr. Hughes by letter of their decision "to drop any appeal." The court is therefore of the opinion that this charge is totally without merit.

With respect to petitioner's allegation that he was denied the effective assistance of counsel, the court is of the opinion that, for the reasons to be stated below, this charge is also without merit.

The first factor that petitioner points to in order to sustain his ineffective assistance charge is that his lawyer failed to make objection to the introduction into evidence of petitioner's signed confessions. The confessions, petitioner maintains, were inadmissible because prior to the interrogations which elicited them, petitioner was not informed of his right to the assistance of counsel. In the state habeas corpus hearing, however, Troopers W. R. Fischer and C. D. Pennington of the Virginia State Police and Mr. W. K. Compton, Sheriff of Bland County, all testified that before petitioner signed the so-called "Bland County Statement" he was specifically advised of his right to consult with counsel.

■■ While there is no testimony to the same effect by the West Virginia officers who took the petitioner's statements in West Virginia, this fact appears to be immaterial since neither Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) nor Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are to be retroactively applied. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The conviction assailed here was obtained at a trial completed long before *Escobedo* and *Miranda* were

rendered and, the rulings in those cases are therefore inapplicable to the present proceedings. Thus, even if the West Virginia authorities did not specifically advise the petitioner of his right to counsel prior to his confessions, under the law existing at the petitioner's trial there would have been no violation of petitioner's constitutional rights by the admission of such confessions into evidence.

The second factor which petitioner cites to sustain the charge of ineffective representation is that his attorney's preparation of the case was inadequate. Petitioner relies on the following statement made by Mr. Hughes during the trial and recorded on page 100 of the trial court transcript: "I came into this case, as Your Honor knows, by court appointment, and have not had time to fully study the case." (sic)

█ When called upon to explain this statement at the state habeas corpus hearing, the following exchange took place between Mr. Hughes and Mr. Thompson, petitioner's attorney at the hearing:

"A (Mr. Hughes) That (the above quoted statement) is in the record, but I had studied the case.

Q Is that a misstatement then, Mr. Hughes?

A I would certainly say it was.

Q Inadvertent mistake?

A Yes, sir. I had investigated the case as thoroughly as I knew how to, without going to Huntington, and I say I didn't know anything about the Huntington situation. The officers advised me. I had the transcript of the record in the preliminary hearing and the written statement of the defendant in addition to my contacts with him."

Mr. Hughes also testified that he spent the better part of three days in Bland County investigating the case as well as a considerable amount of time in his office in the preparation of jury instructions before the decision was made to waive trial by jury. Accordingly, the court in the state habeas corpus proceeding found that Mr. Hughes had adequately investigated and prepared petitioner's case. After reviewing the transcript of the state habeas hearing, this court has reached a similar conclusion.

██ The third factor which the petitioner points to in order to sustain his charge of ineffective representation is that even though the petitioner was laboring under "an obvious mental instability," Mr. Hughes failed to utilize the procedures provided by the Commonwealth of Virginia for determining the competency of an accused. There is, of course, a presumption under Virginia law that an accused is sane at trial unless his insanity is proved by evidence to the contrary. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963). However, if the trial court sees "reasonable ground" to doubt an accused's "sanity or mentality," it may either commit the defendant to a mental institution for an examination, appoint a number of physicians skilled in the field of insanity to examine such person (Code of Va. § 19.1–228 (1950)), or impanel a jury to ascertain the defendant's mental capacity (Code of Va. § 19.1–229 (1950)).

█ The test of incompetence that warrants postponing the trial under such procedures is well settled. As the Supreme Court said in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed.2d 824 (1960) (per curiam): the "test must be whether * * * [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding —and whether he has a rational as well as factual understanding of the proceedings against him." This test, necessarily, is one of degree.

The court has reviewed the transcript of petitioner's trial and the transcript of the state habeas corpus proceeding and is fully aware of the testimony which indicates that petitioner's behavior in West Virginia after his arrest was not entirely "normal" and that petitioner was "irresponsive" during the interviews with his attorney. It does not appear to

this court, however, that the petitioner was so irresponsive or so unstable as to be unable to consult with his counsel and to comprehend the trial proceedings.

For instance, page 29 of the transcript of the state habeas proceeding shows that Attorney Hughes was asked if he asked the petitioner for his version of the charges against him. Upon answering this question in the affirmative,[1] Mr. Hughes testified that the petitioner's reaction was as follows:

> I asked him particularly if he shot the man in the back, and he said the man was walking away from him when he shot him. He further said he couldn't give any explanation for it. He said they had been fussing over a girl or something to that effect.

This type of rational conversation between attorney and client clearly distinguishes this case from the Fourth Circuit's recent decision in Kibert v. Peyton, 383 F.2d 566 (4th Cir. 1967) in which that court found that the petitioner was unable to assist in his own defense.

█ Nor does Owsley v. Peyton, 368 F.2d 1002 (4th Cir. 1966), cited with approval in the *Kibert* opinion, compel a conclusion that, under the circumstances of this case, the petitioner's counsel afforded him ineffective representation by failing to move the trial court for a determination of the petitioner's competency under the Virginia Code provisions cited above. In *Owsley* it was held that the failure of the defendant's counsel to explore the mental competency of the accused and to produce evidence in court where there were "reasonable grounds" to doubt the mental condition of the accused constituted a denial of the right to the effective assistance of counsel. The court in that opinion, however, did not favor us with any specifics as to what constituted the grounds for questioning Owsley's mental capacity at the time of his felony trials.

In this case the primary basis for seeking a mental hearing would have been the "irresponsiveness" of the petitioner during his interviews with counsel. Yet, as pointed out above, the petitioner was sufficiently responsive to describe to his attorney in reasonable detail the circumstances surrounding the homicide with which he was charged. For this reason the court is not prepared to say that there were sufficient grounds to require counsel to attempt to utilize the procedures provided by the Virginia Code for determining competency.

█ Having reached this conclusion, the court must, in order to grant the relief requested, conclude from an examination of the trial court transcript and the transcript of the state habeas corpus proceeding that the petitioner's court appointed counsel was so grossly neglectful of his client's interest as to convert the trial proceedings into a farce or a mockery of justice. See Snider v. Cunningham, 292 F.2d 683 (4th Cir. 1961). "It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights." Snead v. Smyth, 273 F.2d 838, 842 (4th Cir. 1959). The record does not show this to be the case here.

The Supreme Court has recently emphasized the difficulty of retrospectively determining the mental condition of a habeas corpus petitioner many years after his trial. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). This court therefore has but two alternatives—either release the petitioner from custody or dismiss the petition. For the reasons stated above the court is of the opinion that in this case the latter alternative is the appropriate one.

---

1. In the state habeas corpus proceeding, the petitioner denied that Mr. Hughes asked him for his version of the incident. However, the transcript of that proceeding demonstrates strong reason to doubt the petitioner's veracity. See page 78 of the habeas corpus transcript. For this reason the court resolves this conflict in the testimony against the petitioner.

It is therefore adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.