Freddie **BREEDLOVE**, Appellant,

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections, Appellee.

No. 25903.

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1968.

Charles G. Thrash, Jr., Houston, Tex., for appellant.

Howard M. Fender, Robert C. Flowers, Asst. Attys. Gen., Crawford C. Martin, Atty. Gen., of Texas, Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Asst. Atty. Gen., Austin, Tex., for appellee.

Before BELL and SIMPSON, Circuit Judges, and ROBERTS, District Judge.

ROBERTS, District Judge:

In 1961, appellant killed a man in a night club and was charged with murder with malice. Appellant was convicted and sentenced to fifty years in confinement. Represented by very able court appointed counsel in this appeal from a denial of his habeas corpus appeal, appellant asserted several issues. However, since one of the issues will require a reversal, it is the only point that needs to be discussed by this Court.[1]

---

1. One of appellant's other points, which we will not decide because the Jackson v. Denno point is dispositive, is that his *retained* attorney was so ineffective as to amount to an unconstitutional denial of counsel. The State's reply to this contention was that this issue can arise only when the attorney was *appointed* by the Court.

The majority of decisions have drawn no distinction between retained counsel and appointed counsel in the consideration of the adequacy-of-counsel question. See, e. g., Wilson v. Rose, 9th Cir. 1966, 366 F.2d 611, 615; Craig v. United States, 6th Cir. 1954, 217 F.2d 355, 358–359; Abraham v. State, 1950, 228 Ind. 179, 91 N.E.2d 358, 361. The writers on the question of inadequate counsel unanimously condemn any attempt to block inquiry into the adequacy of retained counsel. See Craig, The Right To Adequate Representation in the Criminal Process: Some Observations, 1968, 22 Sw.L.J. 260, 272; Note, 78 Harv.L.Rev. 1434, 1965; Note, 49 Va. L.Rev. 1531, 1963. These authorities conclude that the test should not be whether the state denied the effective assistance of counsel, but whether defendant was denied a fair trial because

he did not have effective representation.

The minority viewpoint, urged by the State in this case, is that no unconstitutional denial of effective counsel can occur unless State officials outwardly prevent the privately retained counsel from performing his duties.

The first argument for this viewpoint is that since there is no state action, there can be no denial of the Fourteenth Amendment right to a fair trial. However, the majority viewpoint's reply is that in light of the rationale of Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, which held that the State participation in an unconstitutional activity was sufficient state action to invoke the Fourteenth Amendment, this argument cannot stand because if there was in fact incompetent counsel under the standards for appointed counsel, the state's participation in the trial which was fundamentally unfair because of the incompetent retained counsel is sufficient state action. See generally, Williams, The Twilight of State Action, 1962, 41 Texas L.Rev. 347. The second rationale of the minority viewpoint is that since defendant selected the lawyer, he is presumed to acquiesce in all of his attorney's

This issue is whether this case should be reversed on the authority of Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, which held that the trial judge must make an independent determination of the voluntariness of a confession before allowing the jury to consider it.

The following facts will frame the determinative issue:

Shortly after the killing, appellant while in custody of the sheriff made a statement admitting the killing and describing his activities after the incident. At the trial, while cross-examining appellant, the District Attorney alluded to part of appellant's statement, which had not been introduced into evidence. The following dialogue occurred:

District Attorney: All right, now, if you are saying that this was in self defense and everything, how come you—when you got home, how come you went and hid that pistol at somebody's house?

Appellant: I didn't hide it, I just left it there.

District Attorney: You said in this statement I will take the officers to my friend's house in Houston and show them where I hid the pistol, that I shot Robert Jackson with.

Defense Attorney: We object your Honor, this statement's not in evidence.

District Attorney: Well, I'm questioning him on this statement.

District Attorney: How come you to say—or did you say I will take the officers to my friend's house in Houston and show them where I hid the pistol, that I shot Robert Jackson with, at Tom's Night Spot in Arcola, Texas, on the night of April 1, 1961, if you thought that you were—that it was an honest self-defense, and you had a right to have a pistol, how come you to take that pistol off, you said you'd show them where you hid it.

Appellant: I didn't say where I hid it.

The District Attorney's obvious purpose was to suggest to the jury that the use of the word "hid" indicated that appellant felt he was guilty because he should have felt no need to hide the gun if he truly had killed the deceased in self-defense.

■ The rule of Jackson v. Denno, supra, is that a "jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given * * * [and] his conclusion that the confession is voluntary must appear from the record with unmistakeable clarity." Sims v. Georgia, 1967, 385 U.S. 538, 543–544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593; Smith v. Texas, 5th Cir. 1968, 395 F.2d 958. Since it is clear that the trial judge did not clearly conclude that the statement is voluntary, the only question is whether this dialogue carried on between the District Attorney and appellant was really a use of the confession sufficient to invoke the rule of Jackson v. Denno.

The habeas corpus court disposed of this contention on the grounds that this statement was neither offered in evidence nor read to the jury; that no contention was made at the time that it was involuntary; and that defense counsel interposed only the objection that the statement was not in evidence, following

activities. Yet, the majority's reply is that the basis of the *Gideon* requirement—that a man is not competent to represent himself at a criminal trial—seems to require the conclusion that he is incompetent to evaluate accurately the ability of his lawyer before the trial or the quality of representation at the trial. Although the test for whether there was unconstitutionally ineffective counsel is clear, see Williams v. Beto, 5th Cir. 1967, 386 F.2d 16, the Fifth Circuit's position is in doubt on this issue of whether the inquiry is limited to appointed counsel and not retained counsel. In a recent per curiam opinion, the minority viewpoint appears to be espoused. Howard v. Beto, 5th Cir. 1968, 375 F.2d 441, 442. However, in another Fifth Circuit opinion, Judge Brown articulates the majority viewpoint. Porter v. United States, 5th Cir. 1962, 298 F.2d 461, 463.

which no further reference was made to it.

■■■■ We disagree. The statement was injected into evidence by the District Attorney's use of it during cross-examination. This effectively placed before the jury the part of the statement that went to the heart of the self-defense plea by appellant. Similarly the reply that no part of the statement was read to the jury must fall before closer analysis. Although the part of the statement in question was not read verbatim, its essence was communicated to the jury, and the critical word "hid" reached the jury. Finally, the failure of the defense counsel to object is not surprising since Jackson v. Denno was not decided until after this case was tried.[2] This fact, however, does not bar this Court from reaching the issue.

Since appellant did not deny that he killed the deceased, the only issue raised in the trial was whether appellant could sustain his plea of self-defense. If he killed Robert Jackson in self-defense, he was not guilty and free. If he did not kill in self-defense, he was guilty of murder with malice.

It could be argued that since the Jackson v. Denno rule has been applied only to cases where the confession has been introduced into evidence and that since the statement in question here was not introduced, the rule should not be applied to this case. The reason for the rule is that a defendant should not be convicted on the basis of his own confession of guilt unless there has been a prior determination by the trial judge that the confession was voluntary. Here the use of the part of the statement in question was designed to suggest that the self-defense plea was spurious and that therefore the appellant was guilty of murder with malice. If the statement had read, "I really didn't kill him in self-defense", it would be difficult to hold

that the rule would not apply. The statement in question is but a subtle variation of this theme since the District Attorney's purpose in using the statement was to suggest to the jury that a man who killed in self-defense would not try to hide evidence of the killing. Furthermore, the jury might have deduced from this question that appellant had confessed to the killing before trial and that having already confessed, he was grasping for the only possible means of escape from punishment—acquittal by reason of self-defense. Since the reason for the rule of Jackson v. Denno applies here, the state trial judge erred in failing to pass on the voluntariness of the statement before allowing the jury to hear it.

The State contends that the use of this statement was for impeachment and therefore permissible, apparently on the theory that the statement was not a confession of guilty, but merely a statement of action that was inconsistent with the probable behavior of a man who knew he had killed in self-defense and was therefore innocent.

■■■■ Although we find no authority directly in point, the Supreme Court ruled on somewhat analogous problems under the Fourth Amendment in Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, and in Walder v. United States, 1954, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. In *Walder*, an indictment against defendant for possession of narcotics had been dismissed because the evidence had been obtained by an unlawful search and seizure. In a subsequent trial for other illegal transactions in narcotics, when defendant testified on direct examination that he had never possessed any narcotics, evidence obtained by the original unconstitutional search was introduced *solely* for the purpose of impeaching his credibility. Although the Court

2. Jackson v. Denno has been made retroactive. See, e. g., Johnson v. New Jersey, 1966, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L.Ed.2d 882; Linkletter v. Walker, 1965, 381 U.S. 618, 628, 85 S.Ct. 1731, 14 L.Ed.2d 601.

affirmed the conviction, this decision has been interpreted by one writer to mean that "although illegally seized evidence may be used to impeach the defendant's testimony relating to his 'good character', it may not be used to impeach testimony that directly relates to the offense charged." 79 Harv.L.Rev. 935, 1030 (1966). This conclusion is consistent with the purpose of the exclusionary rule—to deter police from obtaining involuntary confessions from accused persons in order to convict them.

The *Walder* opinion drew the distinction between the use of tainted evidence to merely impeach credibility and the *Agnello* situation where the prosecution attempted to "smuggle" in tainted evidence on cross-examination as part of rebuttal, which the Court held to be unconstitutional. In the instant case, even assuming arguendo the statement's admissibility for impeachment purposes, it is clear that the colloquy between the District Attorney and appellant directly related to the offense charged and was not being used to impeach appellant's testimony relating to his good character.

Had the jury passed on the voluntariness of appellant's statement, we would be able to reverse the case and require that the State either grant a new trial or hold a hearing on the voluntariness of the confession as outlined by Judge Brewster in Smith v. Texas, supra. But here, neither the trial judge nor the jury passed on the voluntariness of the statement used by the District Attorney during cross-examination. Therefore, we must reverse and remand the case for a new trial consistent with this opinion.

■ The State contends that we should not disturb this case unless we find that the trial judge was clearly erroneous. We disagree.

We, therefore, do no more than adhere to the meaning of * * * [Fahy v. Connecticut, 1963, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171] when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

Chapman v. California, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

Reversed and remanded.