**UNITED STATES of America ex rel. Shaykh Muhammad Ali HASAN a/k/a Abyssinia Hayes**

v.

**Paul J. GERNERT, Chairman, Pennsylvania State Board of Parole.**

Misc. No. 3527.

United States District Court
E. D. Pennsylvania.

Feb. 14, 1969.

John W. Packel and Vincent J. Ziccardi, of Defender Association of Philadelphia, Philadelphia, Pa., for petitioner.

William C. Sennett, Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., Arlen Specter, Dist. Atty., of Philadelphia County, Philadelphia, Pa., and Roger F. Cox, Asst. Dist. Atty., for respondent.

## OPINION AND ORDER

BODY, District Judge.

The relator seeks a writ of habeas corpus. A hearing on his petition was held on September 26, 1968 pursuant to an order of the Third Circuit Court of Appeals in United States ex rel. Hasan v. Gernert, 395 F.2d 193 (May 7, 1968,

per curiam). Briefs were filed by both sides. The relator was represented by John W. Packel, Esq. and Herman J. Pollock, Esq. of the Public Defenders' Office.

The crux of the relator's present action [1] rests on a contention that a certain valuable police report, known as a "75-48", was denied to him and thereby deprived him of an opportunity to test the credibility of three of the government's main witnesses. This, it is contended, amounted to an unconstitutional suppression of evidence by the Commonwealth entitling the relator to a new trial and discharge from the custody of the State Board of Parole.

## FACTS

On November 10, 1964 the relator was tried before the Honorable Charles L. Guerin and a jury on three bills of indictment, September Sessions 1964, Philadelphia County, Nos. 507, 508, 509, charging inciting to riot, conspiracy and destruction of property. These indictments charged him with participating in and inciting disorders which took place on the night of August 28 and 29, 1964, in the vicinity of Twenty-second Street and Columbia Avenue in Philadelphia. At the trial three ministers and three policemen testified against relator. The relator presented three witnesses on his behalf and testified himself.

The Rev. William P. Stevenson testified that he observed the relator on the scene shortly after his arrival at 1:30 A.M. on August 29, 1964. He said that the relator was leading the crowd in chanting and yelling. Reverend Stevenson testified that he saw the relator from 1:30 A.M. when he arrived on the scene until 4:30 A.M. when he left. (Trial Notes 50)

The Rev. Roland V. Jones testified that he observed the relator sometime after 9:00 P.M. on August 28, 1964. Reverend Jones also stated he saw the relator in the area until "the morning hours, 1 to 2." (Trial Notes 3)

The Rev. Wrennie Morgan testified that he saw the relator sometime after 12 midnight on August 29 and that the relator stayed there until 9:00 A.M. on August 29.

All of the above witnesses exhibited a degree of uncertainty in stating specific times at which they observed the relator.

Officers Reardon and Monahan testified that they saw the relator at about 9:15 P.M. or 9:30 P.M. on August 28, 1964 (Trial Notes 35, 43) Cecil Moore, Esq., who testified for the defense, stated he had seen the relator at 7:30 A.M. or 8:00 A.M. on August 29, 1964. (Trial Notes 61)

The relator testified to substantially the same facts at both the trial and the habeas corpus hearing on September 26, 1968. Between 11:00 and 12:00 P.M. on August 28 he was taken to the Temple University Hospital Accident Ward. He was released at about 3:15 A.M. He was then allegedly continued in police custody and held at the Seventeenth and Montgomery Police Station until 9:00 A.M. on August 29, 1964. The hospital records which were introduced indicated that relator was admitted at 12:05 A.M. on August 29, 1964 and was released at 3:15 A.M. (Trial Notes 120) The records also indicated that relator was brought to the hospital in Patrol Wagon 2200 of the 22nd Police District in police custody. (There was a large number of persons admitted during the course of the disturbances on the nights of August 28–29, 1964.)

Other witnesses stated they saw relator at the scene on the evening in question. (Trial Notes 69, 71, 74, 75) The relator admitted his presence at the scene at both the trial and the habeas corpus hearing. (Trial Notes 109, 110) The conflict concerns the time he was

---

1. The form "75-48" allegedly would have shown that the relator was taken by two policemen to Temple Hospital at 12:05 A.M. and released at 3:15 A.M. on August 29, 1964. It would have produced the names of the policemen who had custody of relator to 9:00 A.M. that same day.

present and what he did while there. Contrary to the Commonwealth's witnesses, the relator states that he attempted to control rather than incite the crowds. What relator actually did at the scene of the disorders is, however, not for this Court to decide.

At trial relator's counsel demanded production of the form "75–48" from the district attorney. Counsel indicated that he had made efforts but had been unable to obtain it. A discussion between the court and counsel was held off the record but there was no resolution or ruling indicated. The request for the form "75–48" was never pursued further by relator's trial counsel as far as this Court knows. Further, it was stipulated at the habeas corpus hearing before this Court that the trial counsel and assistant district attorney would be unable to testify as to what was said at the sidebar conference or whether the form "75–48" had been in the assistant district attorney's possession at the time of trial.

Relator testified at the habeas corpus hearing before this Court that he had requested his trial counsel to secure the attendance of a large number of witnesses who could have and would have testified to his activities on the night of the alleged offenses. These witnesses were not called and in some cases were not subpoenaed.

On November 16, 1964 relator was found guilty of inciting to riot, participating in a riot, and conspiracy to commit riot. On January 11, 1965 the Honorable Charles L. Guerin imposed a sentence of $1,000 fine and eighteen months to three years imprisonment in County Prison on September Sessions 1964, No. 507 (charging riot and inciting to riot); and two years probation, to run consecutively to the jail sentence, on No. 508 (charging conspiracy). A directed verdict of not guilty was returned on a charge of riotous destruction of property, September Sessions 1964, No. 509. Relator's maximum sentence on No. 507 expired on August 12, 1967. His parole expires on August 12, 1969.

## LEGAL CONCLUSIONS

This Court is of the opinion that relator should not prevail under the circumstances of this case. The relator labors under a considerable burden in that not only must he prove the existence of the "75–48", but also that the form "75–48" would have contained the names of witnesses whose testimony would have buttressed the relator's alibi.

While there was a demand for the form "75–48" at trial by defense counsel, there is no evidence based upon personal knowledge that the report, specifically referred to, ever existed. The result of the sidebar conference was not preserved in any manner and therefore what occurred is purely a matter of speculation at this time.

There was testimony by the Public Defender investigator, Preston Washington, a twenty-five year veteran of the Philadelphia police, that a form "75–48" would have been made out in such a situation by the police who took the relator to the Temple University Hospital. Such testimony alone, however, does not satisfy relator's burden of proving that such a report existed, and in fact, was prepared and written. It seems quite possible that regular police practices concerning reports might have been suspended on the night in question due to the disorders.

■ Even if the report did exist, it was up to the relator's trial counsel to follow up on his initial demand for it. A simple request at trial for a form "75–48", together with testimony as to regular police practices in this area, without more, does not prove the existence of the report.

■ The fact that the police destroy all form "75–48"s on a regular basis after two years should not alter this Court's decision. Such destruction cannot be deemed to be prohibited by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and other cases in this area. Under the circumstances

of this case, relator's trial counsel had ample opportunity to ascertain the existence or non-existence of the form "75–48". In addition, the form "75–48" was not the only means to gain knowledge of the identity of the police who took relator to the hospital. This Court believes that the two year period before destruction of form "75–48" is not unreasonable and does not amount to ·a suppression of evidence by the Commonwealth.

In those cases which have dealt with the suppression or withholding of evidence or facts favorable to the defense, by the prosecution, there has never been, to the Court's knowledge, any question about the existence of the evidence or facts in point. See e. g. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, supra; Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); United States ex rel. Felton v. Rundle, (3rd Cir., July 11, 1968; reargued en banc November 26, 1968); United States ex rel. Butler v. Maroney, 319 F.2d 622 (3rd Cir. 1963).

■ In view of this Court's decision that the existence of the form "75–48" is crucial and was not sufficiently proven, other difficult questions need not be reached. The forthcoming decision in *Felton*, supra, concerning whether the requested evidence must be first shown to be admissible into evidence cannot be controlling since the existence of the form "75–48" is in doubt in this case. Besides, in *Felton*, the police report is sought to be used to impeach the credibility of a witness through a prior inconsistent statement. In the instant case no statements of witnesses were recorded on the form "75–48". The form "75–48" is sought in order to gain the identity of two policemen who presumably would help establish the relator's alibi and contradict witnesses for the prosecution as far as the time during which the relator was present on the scene. Whether the form "75–48" is within the area of production is left unanswered by the Supreme Court's decision in *Brady* and *Giles*, supra, since both of these cases dealt with statements by co-conspirator and witnesses respectively.

The form "75–48" might be considered to be merely cumulative and immaterial since the hospital records which were introduced into evidence placed the relator at the hospital between 12:05 and 3:15 A.M. on the morning of August 29, 1964. Their effect on the jury was not great. Indeed, if the policemen on the form "75–48" were to testify as the relator says they would, their testimony would also contradict the testimony of Cecil Moore, Esq., the relator's witness, because he stated he saw relator on the scene at 7:30 or 8:00 A.M. on August 29, 1964. Relator claims he was in police custody until 9:00 A.M. on that date.

■ The relator asserts that his trial counsel was incompetent because he failed to call or subpoena a number of favorable witnesses for the defense. The fact is, however, that defense counsel did call three witnesses for the defense. The relator himself testified. The relator did not make any offer of proof as to what the prospective witnesses would have testified. There is no showing that they would have had anything but a cumulative effect on the evidence introduced at trial by defense counsel.

Defense counsel exercised his discretion in conducting the trial. There is nothing to suggest incompetence. United States ex rel. Corbin v. Banmiller, 184 F.Supp. 141 (E.D.Pa.1960) Had no witnesses been called or subpoenaed this Court would be presented with a different situation.

### ORDER

Accordingly, this fourteenth day of February 1969, it is ordered that the petition of Shaykh Muhammad Ali Hasan, also known as Abyssinia Hayes, for a writ of habeas corpus be and the same is denied. There is no probable cause for appeal.