**Thomas Picken McGARRITY, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 69–H–118.**

United States District Court,
S. D. Texas,
Houston Division.

April 21, 1971.

Ed Bluestein, Jr., Fulbright; Crooker, Freeman, Bates & Jaworski, Houston, Tex., court appointed counsel for petitioner.

Crawford C. Martin, Atty., Gen., and Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Petitioner was arrested March 2, 1959, and charged with statutory rape of a 12 year old female child. He was indicted March 9, 1959, and later tried by a jury. On December 2, 1959, he was found guilty, and sentenced to life in prison. A notice of appeal was not filed, and a transcript of the trial was never prepared.

Shortly after his son's arrest, petitioner's father retained counsel to represent his son. Thereafter petitioner and his father became dissatisfied with counsel and discharged him. On September 15, 1959, petitioner and his father retained John Cutler, a resident attorney of Harris County, Texas. Mr. Cutler represented petitioner during the subsequent state trial.

On February 6, 1969, petitioner filed an application for the writ of habeas corpus in this Court. Jurisdiction is present, 28 U.S.C. § 2254, and the state's concession that state remedies have been exhausted is correct. Because petitioner was indigent and raised issues in his petition which necessitated an oral hearing,

counsel was appointed to represent him.[1] Subsequently he was given a psychiatric examination and was found to be competent. (Petitioner's Exhibit 17.) At the oral evidentiary hearing the Court was able to observe petitioner and is convinced he was competent at that time.

The following opinion shall constitute the Court's findings of fact and conclusions of law in this case. F.R.Civ.P. 52.

1. At the oral evidentiary hearing petitioner elected not to present evidence to substantiate some of the claims he had previously asserted. Accordingly, the Court finds and concludes that the following contentions raised by petitioner have no merit, to wit: (A) his contention that he was denied due process because he did not receive a preliminary hearing; (B) his contention that he was denied due process because he was not allowed to make a phone call after his arrest; and (C) his contention that he was denied due process by the prejudicial comments of the prosecuting attorney during trial.

2. Petitioner's contention that he was denied due process because the state failed to prepare a transcript of his trial is erroneous. He did not appeal. Nor did he ever indicate to the state trial court that he was indigent. It has never been held unconstitutional for a state to authorize the destruction of criminal transcripts or court reporters' notes after a reasonable period of time has elapsed. Since no evidence was adduced indicating intentional state action designed to discriminate against petitioner, the Court finds and concludes that his contention is without merit. Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); Worts v. Dutton, 395 F.2d 341, 343 (5th Cir. 1968); United States ex rel. McKee v. Pate, 371 F.2d 405, 407 (7th Cir. 1967) cert. denied 389 U.S. 864, 88 S.Ct. 124, 19 L.Ed.2d 133 (1968).

3. Petitioner's allegations that the State of Texas denied him due process by interfering with his right of appeal; his right to subpoena witnesses for his defense; and his right to be represented by counsel when given a psychiatric examination by the Harris County, Texas, psychiatrist are without merit.

At the oral hearing, petitioner was unable to adduce any evidence that state officials prevented his taking an appeal, or prevented his subpoenaing any witnesses. Instead, he presented evidence bearing on his contention that his retained counsel was incompetent for not subpoenaing witnesses or appealing the case. This evidence will be examined later in depth. Since there was no state interference with petitioner's rights, his contentions do not rise to a constitutional plane. United States ex rel. O'Brian v. Maroney, 423 F.2d 865 (3rd Cir. 1970) (appeal); Maguire v. United States, 396 F.2d 327, 330 (9th Cir. 1968) cert. denied 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969); Moore v. Beto, 320 F.Supp. 469 (S.D.Tex.1970).

None of the statements which petitioner made to the county psychiatrist were used as evidence against him. Therefore, the lack of counsel did not deny him due process.

4. Petitioner's attack upon the competence of his retained counsel, John Cutler, is without merit.[2] After a full examination of the evidence, I find and conclude that his counsel was competent.

Petitioner McGarrity's father retained John Cutler to represent petitioner on September 14, 1959. Mr. Cutler is and was an experienced criminal trial attorney. He was retained approximately

---

1. Petitioner's appointed counsel, Mr. Bluestein, has ably represented petitioner in the best traditions of the bar. The Court regrets that it cannot pay Mr. Bluestein for his work, but at the time of his representation Congress had not provided funds to compensate counsel who represent habeas corpus petitioners.

2. Conscious that Howard v. Beto, 375 F.2d 441 (5th Cir. 1967) (per curiam) may no longer be good law, Breedlove v. Beto, 404 F.2d 1019, 1020 n. 1 (5th Cir. 1968), the Court has weighed the petitioner's attacks on his *retained* counsel by the standards used to test the performance of appointed counsel.

two and one-half months before petitioner's trial.

Mr. Cutler testified that he interviewed petitioner and his family prior to trial. He indicated that he did not recall all the details of petitioner's case as he had tried numerous cases in the intervening period. In response to questions about the tactics he used, he stated that he cross-examined the state's witnesses and called petitioner and other witnesses to establish the defenses of denial and alibi.

Other evidence corroborates Mr. Cutler's assertions that he waged a full defense. Petitioner introduced the handwritten notes which had been made by one of the state prosecutors during the trial (Petitioner's Exhibit Nos. 3 and 8). These notes reflect that Mr. Cutler called numerous defense witnesses.

Mr. Neil McKay, the prosecutor in charge of McGarrity's case, corroborated the authenticity of the notes mentioned above. He also remembered that Mr. Cutler had waged a spirited defense.

From these notes, Mr. McKay's testimony, and the testimony of Mr. Cutler, it is clear that Mr. Cutler investigated petitioner's claims and did indeed wage a spirited defense.

After extensive historical analysis of Eighteenth Century common and statutory law, the Supreme Court of the United States held in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), that the Fourteenth Amendment's guarantee of due process insures an accused that when he is entitled to the assistance of counsel for his defense the counsel's representation will be "effective". The Court then enumerated that Powell's counsel had been ineffective because they did not have time to properly consult with Powell; to investigate the facts; or to otherwise prepare for trial; and, because their representation had been pro forma, not zealous or active. Id.

The Court of Appeals for this Circuit has written extensively on the duties of criminal counsel. The clearest statement of the test which the Court of Appeals uses to judge the performance of counsel was enunciated in Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). There the Court stated:

It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.

Id., 704. See also: King v. Beto, 429 F.2d 485 (5th Cir. 1970) (per curiam). 6 L. B. Orfield, Criminal Procedure Under the Federal Rules, § 44:24 (1967).

The Court in Williams went on to point out that effective counsel is not perfect counsel; and that, "Lawyers are not required to be infallible. If they were, law practice would soon totally disappear." Id. 354 F.2d 705, Orfield, supra, at 89.

■ Incompetency, infidelity, or ineffectiveness of counsel are not proven by counsel's loss of a case. Id.

■ In every difficult case an attorney is called upon to make numerous close tactical decisions, and, the fact that generous indulgence in hindsight or the statements of another attorney indicate a different tactical choice would have reaped a better result does not prove incompetence. Id.

In Williams the Court emphasized that when counsel "decides as his knowledge, experience, and talents best permit, and then moves ahead * * * that * * * [this] is all any lawyer can do, and the client has no right to complain of the absence of a miracle." Id.

In each of the cases to be discussed below the presence of the error enumerated was held insufficient to prove ineffective counsel, to wit: (A) A stipulation that certain drugs were narcotic when they were not, Gambill v. United States, 276 F.2d 180 (6th Cir. 1960); (B) Failure to call alibi witnesses who counsel believed would harm his defend-

ant's case although by his refusal disobeying his client, Gray v. United States, 112 U.S.App.D.C. 87, 299 F.2d 467 (1962); (C) Failure to raise the defense of insanity where the facts of the case showed that the defendant was not psychotic—merely sociopathic, McHale v. United States, 106 U.S.App.D.C. 24, 268 F.2d 899 (1959); (D) Failure to object to the use of an inadmissible confession, Johnson v. United States, 333 F.2d 371 (10th Cir. 1964); and (E) Failure to correctly estimate the punishment which could be assessed and therefore unduly curtailing jury agreement, United States ex rel. Hughes v. Rundle, 307 F.Supp. 996 (D.C.Pa.1969).

■ From an analysis of the case law it is evident that effective counsel need not be errorless counsel. Instead the Courts emphasize that effective counsel is one who, having the interests of his client at heart, attempts to render the best defense possible under the circumstances.

In attempting to prove that Mr. Cutler was incompetent petitioner asserted that his incompetence was shown because he failed to: (A) appeal the case when requested to do so; (B) subpoena alibi witnesses; and (C) conduct an adequate pretrial investigation which would have led him to plead the defenses of incompetence to stand trial and insanity at the commission of the offense.

(A) Mr. Cutler's failure to file notice of appeal did not deny petitioner the effective assistance of counsel. As previously noted Mr. Cutler was retained—not appointed—to represent petitioner. When the jury rendered its verdict, Mr. Cutler advised petitioner and later his father that they had a right to appeal. He also told them that there were no errors in the record and that they should retain another counsel to handle any appeal procedures they desired to be intiated. He told them he would not handle an appeal.

The record discloses that petitioner and his father were not then indigent. Neither petitioner nor his father indicated to the state court or any state official that they desired counsel appointed to handle an appeal.

Petitioner's father testified that he originally wanted to appeal, but that he abandoned this desire after his conversation with Mr. Cutler.

The petitioner testified that Mr. Cutler told him he would handle the appeal. Since the contradictory testimony of Mr. Cutler is corroborated by the testimony of petitioner's father, the Court finds that petitioner's testimony was a fabrication.

I find and conclude that Mr. Cutler informed petitioner of his right to appeal, of his belief that there was no reversible error in the record, and that another counsel should be retained to handle the appeal. I further find and conclude that upon the advice of Mr. Cutler and of his family, petitioner elected not to appeal and therefore waived his right to appeal. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Due process does not require retained counsel to handle the appeal of a non-indigent defendant. Retained counsel may withdraw from his representation after trial provided he informs his clients of their right to appeal and the fact that he will no longer represent them. Breedlove v. Beto, 404 F.2d 1019, 1021 n. 1 (5th Cir. 1968). Therefore Mr. Cutler's failure to file a notice of appeal in this case did not deprive petitioner of the assistance of effective counsel.

(B) Petitioner's contention that Mr. Cutler was incompetent because he failed to subpoena alibi witnesses was not substantiated by the evidence presented.

■ Petitioner contended that a woman and several men were with him at the time the rape occurred and that they would verify his whereabouts. Mr. Cutler admitted that he did not call the woman to testify. The evidence, however, established that he did call the men and petitioner to establish the alibi defense. It was also established that Mr. Cutler ascertained that the woman was

married to a man who had not been with petitioner and his friends that evening. It was also established that when she was contacted by Mr. Cutler she told him that she did not want to testify because she was afraid of what her husband might do to her when he discovered she was out with other men.

Mr. Cutler testified that based on this knowledge he concluded that her testimony would be cumulative and potentially damaging because the woman would be hostile to the petitioner.

In light of this evidence—uncontradicted by petitioner—the Court finds and concludes that Mr. Cutler's decision to delete the woman from his witness list was a reasonable tactical decision. This was not the decision of ineffective or of incompetent counsel. Daugherty v. Beto, 388 F.2d 810, 813 (5th Cir. 1957) cert. denied 393 U.S. 986, 89 S.Ct. 461, 21 L.Ed.2d 447 (1969); Tompa v. Commonwealth of Virginia, 331 F.2d 552 (4th Cir. 1964); United States ex rel. Hasan v. Gernert, 297 F.Supp. 1301, 1304 (E.D. Pa.1969).

(C) Petitioner's contention that Mr. Cutler's incompetence was shown by his failure to conduct sufficient pretrial investigation thereby being unaware of the possibility of presenting the defenses of incompetence to stand trial or insanity at the commission of the offense is unfounded.

Petitioner presented evidence showing that he had been discharged from the United States Marines for mental disorders prior to the time he committed the offense for which he was tried. (Petitioner's Exhibit No. 1). His mother and his father testified that they believed he did not act normally after he returned from the service. His father testified that he attempted to inform Mr. Cutler of his son's medical history, but felt that Mr. Cutler did not understand him. Petitioner also presented the testimony of Mr. McKay to establish that Mr. Cutler had never asked to examine his files. Then, petitioner introduced exhibits from these files which indicated that the prosecutor had ordered petitioner ex-

amined by the Harris County, Texas, psychiatrist. (Petitioner's Exhibit No. 5, and Respondent's Exhibit No. 1). The psychiatrist's report, however, reflected the doctor's opinion that petitioner was legally competent and legally sane—although somewhat abnormal. (Respondent's Exhibit No. 1).

Mr. Cutler testified that he did not remember petitioner's father ever mentioning his son's irregularities or mental problems. He then testified that he discussed petitioner's case with him several times before trial and during the trial itself. He remembered that petitioner appeared and acted normally on these occasions when they discussed the trial strategy of denial and alibi. Mr. Cutler emphasized that he was so convinced of petitioner's regularity and competency that he elected to call petitioner as a witness in his own behalf. Mr. McKay, the prosecutor, confirmed Mr. Cutler's observations. He testified that petitioner acted normally during the trial.

When shown the Marine Corps medical records, Mr. Cutler admitted that they would have been helpful in analyzing the case. He then pointed out his belief that these records would not have changed his defense tactics because he believed that legal insanity and legal incompetency were not easy defenses to prove and that the defense of alibi was preferable in petitioner's case. He further stated that he avoided the defense of legal insanity or legal incompetency unless the state agreed with his analysis. For the reasons to be discussed below, it therefore appears that Mr. Cutler's failure to ascertain petitioner's prior medical history was harmless error and would not have affected his tactical strategy in petitioner's case.

Mr. Cutler then justified his failure to ask Mr. McKay for his work files. He stated that his prior experience with the Harris County, Texas, District Attorney's staff had shown them unwilling to permit discovery permitted by the state criminal rules. He then stated his belief that the prosecutor's letter re-

questing the mental examination and the examination itself were privileged. Petitioner did not rebut this statement and it will be considered true.

■ The record here does not present evidence of constitutional incompetence of counsel. There is no evidence that Mr. Cutler's tactics would have been changed by further pretrial investigation of the sort asserted by petitioner as necessary. Instead, it is more reasonable to presume that any investigation into petitioner's sanity would have achieved the same conclusions as those of the state. There is no evidence that Mr. Cutler was not active—zealous—in his attempts to defend petitioner. The Court, therefore, finds and concludes that Mr. Cutler's representation did not violate any of petitioner's due process guarantees. Williams v. Beto, supra; Daugherty v. Beto, supra; *Compare the facts here to those in*: Brooks v. State of Texas, 381 F.2d 619 (5th Cir. 1967); Cf.: Tompa v. Commonwealth of Virginia, supra; Nicholas v. Peyton, 274 F.Supp. 710, 714 (W.D.Va.1967).

5. Petitioner's contentions: (A) that his conviction is invalid because he was insane at the time he committed the crime and (B) that he was denied due process by being tried and convicted while mentally incompetent are without merit.

■ Due process is not violated because a person who is insane at the time he commits an offense is later convicted for the commission of the offense. Richards v. United States, 342 F.2d 962, 963 (8th Cir. 1965) (per curiam); Wheeler v. United States, 340 F.2d 119, 121 (8th Cir. 1962) (per curiam); Stewart v. Stephens, 244 F.Supp. 982, 986–987 (E.D.Ark.1965). Instead the constitutional issue to be determined is the question whether the petitioner was legally competent to stand trial. *Id.*

Therefore the issue before this Court is the duty to ascertain if petitioner has sustained his burden of proving he was legally incompetent to stand trial in 1959. If he was incompetent his convic-

tion must be vacated. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L. Ed. 835 (1956).

Legal competency has been defined by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). There the Court dictated that to judge legal competency, a court must ascertain, "whether he [the accused] has sufficient present ability [before and during trial] to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.*; *Note*: Swinney v. United States, 422 F. 2d 1257 (5th Cir. 1970) (per curiam).

■ In Lee v. State of Alabama, 406 F.2d 466, 471 (5th Cir. 1969) cert. denied 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1968) the court pointed out that one can be competent to stand trial although his sanity can be in doubt. The court then emphasized that because a person has a long history of prior mental disorder is not conclusive proof that the person does not possess sufficient mental capabilities to fulfill the *Dusky* requirements. *Id.* Stated differently, "as the cases have pointed out, one may be suffering from a mental disease which is at the root of antisocial action and simultaneously have a rational and factual understanding of court proceedings and be able to consult with a lawyer on a reasonably rational basis." Lee v. State of Alabama, supra, at 471–472; *see*: Wolf v. United States, 430 F.2d 443, 445 (10th Cir. 1970); Ferguer v. United States, 302 F.2d 214 (8th Cir. 1962) (per Blackmun, J.); Beale v. United States, 317 F.Supp. 731, 735–736 (N.D.Miss.1970).

Before this Court can determine the question of petitioner's competency in 1959, it must make the threshold determination posed by the Supreme Court in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); and followed by the Court of Appeals for this Circuit in Lee v. State of Alabama, supra; and Clark v. Beto, 415 F.2d 71

(5th Cir. 1969). That is, the Court must evaluate all the evidence adduced at the hearing and decide whether it can now make a "meaningful" determination of petitioner's competency to stand trial in 1959. Lee v. State of Alabama, supra; Clark v. Beto, supra.

Although the term "meaningful" is nowhere defined, the Appellate Courts in both opinions enumerated the factors which led them to affirm the lower courts' determinations. Id.

In Lee v. State of Alabama, supra, the court emphasized that the lower court's determinations of prior competency to stand trial were "meaningful"— the determination could be made—because: (A) demeanor witnesses were called to testify about the petitioner's conduct during his former trial (he had been tried 25 years before); (B) expert opinion was elicited from a doctor on the state lunacy commission which had adjudicated petitioner sane prior to his state trial; and (C) the court could consider more than the "sterile" information contained in printed records. Id., 406 F.2d 471.

In Clark v. Beto, supra, the court affirmed the decision of former United States District Judge Joe Ingraham. There the lower court had determined that a meaningful determination of prior competency was then impossible and granted the writ of habeas corpus. The lower court reasoned that it could not make a meaningful determination because there were "substantial conflicts in the evidence relating to competency." Id., 415 F.2d 72. In that case the lower court had heard conflicting opinion evidence from psychiatrists and psychologists on the question whether the petitioner's previous competency could then be determined. Id.

In order to establish his incompetence petitioner introduced numerous medical records (Petitioner's Exhibits Nos. 1, 11–17) and the demeanor testimony of several persons who were familiar with his conduct before and during his trial. Although given the opportunity to call expert witnesses to substantiate his claim, petitioner declined the invitation and elected to stand on the medical records he submitted. To rebut petitioner's contentions, respondent introduced a medical report of the Harris County, Texas, psychiatrist who had examined petitioner prior to his trial (Respondent's Exhibit No. 1) and demeanor evidence.

After examination of the medical opinion evidence submitted by both parties, the Court is convinced that it does not differ significantly. In all these opinions the psychiatrists and psychologists were convinced that petitioner was suffering from a mental disorder which caused him to be imbalanced, immature and violent. They were convinced, however, that he was neither psychotic nor legally incompetent.

Of special significance is the report prepared by Dr. Benjamin Sher, M.D., the Harris County, Texas, psychiatrist who at the prosecutor's request evaluated petitioner before trial. In his report Doctor Sher states conclusions which reflect that petitioner's mental disorders would not impede his ability to communicate rationally with his counsel or impede his ability to understand and appreciate the nature and the consequences of the proceedings against him. (Respondent's Exhibit No. 1). Dr. Sher was the last trained person to evaluate petitioner prior to trial.

It is important to emphasize again that when this Court offered to recess the case until Dr. Sher could be called as a witness, petitioner declined to accept the offer. In light of this refusal the Court finds that if called Dr. Sher would have substantiated his previous conclusions and that petitioner would have been unable to refute them.

The only medical records submitted by petitioner which the Court can construe as aiding his case are those which were prepared by the United States Marine Corps. (Petitioner's Exhibit No. 1). This lengthy record reflects that petitioner was discharged from the Marines on September 19, 1958—approximately one year before he retained Mr. Cutler

to defend him at his December 1959 trial. He was discharged because the Marine Corps doctors believed him to be medically unfit to be a Marine.

These records reflect that petitioner was found to be suffering from different mental disorders which were associated with bearing the responsibilities of military life and discipline. They also reflect that the Marine Corps doctors believed that once petitioner was discharged he would be " * * * competent to manage his own affairs * *." (Petitioner's Exhibit No. 1 at p. 48).

The Marine Corps Medical Board which reviewed the doctor's recommendation that petitioner was sufficiently competent to manage his affairs when released agreed. (Petitioner's Exhibit No. 1 at p. 50). They concluded, " * * the patient is physically and mentally able to appear in person before the Physical Evaluation Board and such appearance would not be deleterious to his physical or mental health. He is competent to manage his own affairs at the present time. Maximum hospital benefits have been achieved." (Petitioner's Exhibit No. 1 at p. 50).

Petitioner relies heavily on the Marine Corps September 19, 1957, evaluation that the petitioner was then incompetent to assist in his defense against pending Marine Corps discipline charges. This September 19, 1957, medical opinion is not persuasive when compared with the later Marine Corps medical opinions that petitioner was mentally competent to be released from hospitalization and to conduct himself as a civilian (Petitioner's Exhibit No. 1 at pp. 35–39, 46–50). Furthermore, this 1957 evaluation loses more persuasive value when compared with the still more recent medical evaluation of Dr. Sher (Respondent's Exhibit No. 1) discussed earlier.

Another factor indicating petitioner's competency to stand trial in 1959 was the testimony of petitioner's father. Mr. McGarrity senior testified that after his son's arrest in March of 1959 he

retained Henry Doyle to represent his son. He testified that Mr. Doyle recommended that petitioner plead guilty in exchange for the five year sentence which Doyle had previously negotiated with the prosecutor. He then testified that when he and Mr. Doyle broached the possibility of a negotiated plea to his son that petitioner appreciated the significance of the sentence, insisted that he was innocent and refused to plead.

This testimony is persuasive that petitioner was aware of the charges pending against him, and was rationally able to plot the course of his defense with his counsel. In fact, he was so displeased with the course charted by Mr. Doyle that he discharged the latter, and his father later retained Mr. Cutler.

Finally, but of considerable significance is the demeanor evidence. None of the witnesses except the petitioner himself—who the Court finds to be beyond belief, and utterly devoid of credibility—testified that petitioner's actions indicated he did not understand the charges against him or was not able to assist his counsel.

Mr. Cutler testified that petitioner was rational when they discussed the case prior to trial. Mr. Cutler emphasized that petitioner was able to assist in his own defense and that petitioner suggested a witness or witnesses who should be called. Mr. Butler also testified that he believed petitioner would make a good witness in his own behalf.

The only demeanor evidence which cast any shadow upon petitioner's competence was Mr. Cutler's testimony that after petitioner started to testify in his own behalf he believed that petitioner did not appreciate the seriousness of the charges. Mr. Cutler then enumerated the foundations of his opinion as being based on the fact that petitioner assumed an arrogant and cocky attitude when answering questions posed by counsel.

The fact that petitioner was cocky or arrogant while on the witness stand, however, is not persuasive that he was

incompetent to stand trial. Instead it confirms the prior medical diagnoses that he was immature and lacked common sense.

 After carefully reviewing all the evidence the Court is convinced that it can "meaningfully" determine petitioner's competency to stand trial in 1959. Furthermore, the Court is persuaded that the evidence submitted by petitioner to prove his prior legal incompetency was insufficient to sustain his burden of proof. Thus, the Court finds and concludes that petitioner was legally competent to stand trial in 1959.[3]

6. Petitioner's contentions that the state prosecutor suppressed evidence favorable to his defense are without merit.

 To sustain his contention petitioner must bear the burden of showing this Court two things, first that the prosecutor or other state officials had evidence connected with his case which they did not disclose to the defense; and second, that the undisclosed evidence caused petitioner to receive a fundamentally unfair trial. Luna v. Beto, 395 F.2d 35 (5th Cir. 1968) (en banc) cert. denied 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568 (1969); *See:* United States ex rel. Fein v. Dugan, 410 F.2d 13, 19 (2nd Cir. 1969) cert. denied 395 U.S. 935 (1969).

During the oral hearing petitioner was granted permission to examine the work file which the state prosecutor's office had compiled before and during petitioner's state trial. After being granted time to examine the file petitioner assured this Court that he had had sufficient time for the examination. The state district attorney who had prosecuted petitioner, Mr. McKay, assured the Court that the file contained all the records which his office now possessed concerning petitioner.

Petitioner and respondent stipulated that because there was no transcript it would be impossible to ascertain accurately what evidence was adduced during petitioner's trial.

In order to sustain his contention that the prosecutor had suppressed evidence the petitioner introduced into evidence the following documents which he located in the prosecutor's file:

(1) A letter from the prosecutor requesting the County Psychiatrist to evaluate petitioner (Petitioner's Exhibit No. 5);

(2) The portion of a police offense report in which an investigating officer noted that petitioner seemed mentally unbalanced, had been discharged from the Marines, and had recommended a medical examination of the petitioner (Petitioner's Exhibit No. 7 at p. 2);

(3) The portion of a police offense report which contained a report of the initial statement of the prosecutrix (Petitioner's Exhibit No. 7);

(4) The prosecutrix's sworn statement which she had given the police (Petitioner's Exhibit No. 9);

(5) The prosecutrix's grand jury testimony (Petitioner's Exhibit No. 4);

(6) The police toxicologist's report in which it is noted that no semen was located upon the dress worn by the prosecuting witness when raped (Petitioner's Exhibit No. 6);

(7) The hospital laboratory report in which it is noted that no semen was found on or in the prosecutrix (Petitioner's Exhibit No. 10);

(8) The portion of a police offense report summarizing the report of

---

3. Although not raised directly by the pleadings, the Court believes it should point out that since the state trial court had no indication that petitioner's sanity or competency were in question, it was

not remiss in failing to hold a sanity or competency hearing on its own motion. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

the doctor who examined the prosecutrix and noted that she had a marital type opening (Petitioner's Exhibit No. 7 at p. 1); and

(9) The respondent's first exhibit which was the psychiatric report made by Dr. Sher indicating petitioner to be sane.

Petitioner then elicited testimony from both Mr. Cutler and Mr. McKay about these documents. Mr. Cutler said he had never seen these reports before, and acknowledged that he had never made a formal or informal request to see the prosecutor's work file. Mr. McKay agreed. He testified that he had never shown these reports to Mr. Cutler. He did suggest that he may have shown his files to Mr. Doyle, petitioner's first counsel. He indicated that if asked, he would have shown his file to Mr. Cutler. He indicated his belief that none of the reports contained evidence favorable to the defense.

Petitioner asked Mr. Cutler if the reports would have been helpful in preparing his defense. Mr. Cutler acknowledged that the information would have been helpful. Mr. Cutler did not tell how the material would have aided him. Petitioner did not ask Mr. Cutler if any of the exhibits contained matters which in and of themselves would have rebutted any element of the prosecutor's case or would have established or suggested a new line of defense or strategy. Petitioner adduced no evidence to answer this question.

Petitioner has not alleged that the prosecutor knowingly used perjured testimony; failed to correct inaccurate or untruthful statements of witnesses; failed to produce evidence he promised to safeguard and later produce; failed intentionally to honor petitioner's request for evidence favorable to the defense; or deliberately, with bad faith, suppressed evidence for the purpose of obstructing justice. None of the evidence presented would substantiate a claim that any of the conduct described above occurred, and the Court so finds and concludes.

Instead, petitioner is contending that although the prosecutor was not requested to divulge evidence the Court must grant his writ because, by the generous use of hindsight, it is clear that the undisclosed information contained in petitioner's Exhibits numbered 4–7, 9, 10 and respondent's Exhibit No. 1 would have been "useful" or "helpful" to his defense.

■ The law is clear that the prosecution is not the guardian of every possible avenue of defense open to the defendant. Due process is not violated when the state refuses to open its files for fishing expeditions. United States ex rel. Fein v. Deegan, 298 F.Supp. 359, 363 (S.D.N.Y.1967) affd. 410 F.2d 13 (2nd Cir. 1969) cert. denied 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969); Cf: Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). Instead, the courts have adopted strict standards which must be fulfilled in postconviction relief cases before a final conviction will be laid aside on the ground that the unintentional suppression of evidence denied the petitioner a fair trial. Luna v. Beto, supra; United States ex rel. Fein v. Deegan, supra; United States v. Keogh, 391 F.2d 138 (2nd Cir. 1968) (per Friendly, J.).

■ In cases like petitioner's where there is no allegation or indication of intentional prosecutorial misconduct, the petitioner is required to show that the undisclosed information would have been *highly relevant* to his defense. A showing that the undisclosed evidence would have been helpful or material to the defense is insufficient to sustain a finding that the petitioner's deprival of the use of the evidence denied him due process. *Id.*

■ In order to prove a high degree of relevance a petitioner is obligated to demonstrate: (1) that *considered alone* the undisclosed information would have informed petitioner's trial counsel of tactics he would not otherwise have considered, Luna v. Beto, supra, at 395 F.2d

40-42 (concurring opinion of Brown, C. J.) ; *see also*: Giles v. Maryland, 386 U.S. 66 at 98, 99, 87 S.Ct. 793, 17 L.Ed. 2d 737 (1967) (concurring opinion of Fortas, J.) ; and (2) that the undisclosed information would have been so crucial or material to the defense that its use by itself, alone, would have changed the jury verdict of conviction or their sentence. Stated differently, to fulfill the second test petitioner must demonstrate that the undisclosed information by itself, alone, would have destroyed material inferences of guilt created by the evidence adduced by the state. Warren v. Davis, 412 F.2d 746 (5th Cir. 1969) (per curiam) ; Luna v. Beto, supra; United States v. Keogh, supra; United States ex rel. Pugach v. Mancusi, 310 F. Supp. 691, 712-715 (S.D.N.Y.1970).

Using the test enumerated above to weigh the relevancy of the undisclosed information in petitioner's case, it becomes apparent that petitioner received due process. See and compare the facts in the following cases: Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968) ; Barbee v. Warden of the Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964) ; Ashley v. State of Texas, 319 F.2d 80 (5th Cir. 1963) ; with the facts here and the facts in Warren v. Davis, supra, and Luna v. Beto, supra.

None of the undisclosed evidence suggests defenses or strategy which a competent defense lawyer would not have explored in preparation for the trial of a rape case. Thus, having previously found Mr. Cutler to have been competent, this Court will not now presume he failed to explore these avenues of defense strategy. Likewise, none of the information to be garnered from the undisclosed materials, or the introduction of the materials themselves, would have changed the jury's verdict.

■ Accordingly, the Court finds and concludes that petitioner met his burden of proving that the prosecutor had information he did not divulge to the defense but that petitioner failed to prove that the undisclosed materials would have been "highly relevant" to his defense.

Therefore, it is ordered that the petition be denied. The Clerk shall send copies of this Memorandum and Order to petitioner, his counsel and respondent's counsel.